197 N.J. Super. 555 (1984)
485 A.2d 703
JOSEPH DELLE FAVE, PLAINTIFF,
v.
SANITATION EQUIPMENT CORP., NORTH JERSEY WHITE COMPANY, LEACH COMPANY, WHITE AUTO CAR COMPANY, ABC CORP., A FICTITIOUS NAME, ET ALS., DEFENDANTS.
Superior Court of New Jersey, Law Division Bergen County.
Decided June 7, 1984.
*557 Edward M. Van Dorn, Jr. for plaintiff (Coyle, Van Dorn & Jackson, attorneys).
Marc C. Bateman, independent attorney for plaintiff on this application (Pelio & Bateman, attorneys).
*558 No appearance required by any remaining parties.
SIMPSON, A.J.S.C.
This is a contested application under R. 1:21-7(f)  prior to amendments to R. 1:21-7 effective as to contingent fee arrangements agreed to after January 15, 1984  for an increased attorney's fee in excess of the amount allowable pursuant to R. 1:21-7(c). There are several questions of first impression  not yet addressed under the new or old R. 1:21-7  in addition to the usually required comparative evaluation of the factors involved in the particular case against the presumed reasonableness of the percentages set forth in R. 1:21-7(c).

I. Background
Plaintiff was injured on May 2, 1979 when he fell from a ladder affixed to a sanitation truck. He filed a workers' compensation claim petition against his employer, Mario Services, Inc. whose insurance carrier was United States Fidelity and Guaranty Corporation (USF & G). He also brought a third-party product liability action against White Auto Car Company (the manufacturer of the cab and chassis of the truck), Leach Company (the manufacturer of the sanitation compactor), and Sanitation Equipment Corporation (the assembler of the sanitation unit).
On September 20, 1983 judgment was entered in the Division of Workers' Compensation in favor of plaintiff-petitioner upon a finding of 100% of total and permanent disability with benefits of $156 a week. The judge of compensation allowed a counsel fee of $6,250, payable $2,250 by plaintiff-petitioner and $4,000 by respondent. Temporary disability payments for 223 2/7 weeks at $156 a week had been paid pursuant to N.J.S.A. 34:15-12a and 450 weeks of initial total and permanent disability, pursuant to N.J.S.A. 34:15-12b, were awarded and which would run to April 1, 1992. Total and permanent disability payments might continue thereafter, of course, in accordance with the provisions of N.J.S.A. 34:15-12b. On the same date, the judge *559 of compensation approved commutation, pursuant to N.J.S.A. 34:15-25, of part of the award, in the amount of $15,582 to cover petitioner's share of attorneys fees ($2,250) and medical fees ($137.50) as well as the purchase of a van. This worked out to 135.196563 weeks to be deducted from the "rear end" of the permanent disability award, including a "discount gain" to respondent of $5,508.66, and advancing the initial termination date of permanent disability to February 10, 1989. With temporary disability payments and medical benefits, the workers' compensation lien totalled $84,546.93 at the time of settlement of the third-party action. The net lien was calculated to be $56,225.66 after crediting "expenses of suit" and a maximum 33 1/3% "attorney's fee" pursuant to N.J.S.A. 34:15-40(e).
The third-party action was settled on January 18, 1984, after 1 1/2 days of pretrial motions and negotiations, for a total of $235,000 to be paid by the defendants and a payment to plaintiff of $25,000 by U.S.F. & G. The compensation carrier also waived its N.J.S.A. 34:15-40 lien as set forth above, but plaintiff-petitioner released his possible future permanent disability claim rights against Mario Services, Inc. and U.S.F. & G. under N.J.S.A. 34:15-12(b). This lump-sum compensation claim settlement was approved by the judge of compensation pursuant to N.J.S.A. 34:15-20.

II. Counsel Fee Application
There apparently was no written contingent fee agreement as required by R. 1:21-7(g) in this type of case. The initial application was on notice that "the fee requested is [1/3] of the settlement after disbursements ... in line with the recent amendment of R. 1:21-7(c)." Counsel's calculation of the requested fee, amount allowable under old R. 1:21-7(c), and the sought increase were as follows:

*560
 Settlement $260,000.00
 Expenses and Costs of Litigation 7,038.11
 ___________
 $252,961.89
 ===========
 Requested Fee 33 1/3% of $252,961.89 $ 84,320.63[1]
 Amount Allowable
 R. 1:21-7(c) % On Fee
 (1) 50 $ 1,000.00 $ 500.00
 (2) 40 2,000.00 800.00
 (3) 33 1/3 47,000.00 15,666.00[1]
 (4) 25 50,000.00 12,500.00
 (5) 20 150,000.00 30,000.00
 (6) 10 2,961.89 296.18
 ___________ __________
 $252,061.89 $ 59,762.18
 ___________
 Increase Sought $ 25,558.45
 ===========

Plaintiff filed an affidavit objecting to any increased fee, contradicting counsel's assertion that he would have accepted a $100,000 settlement, and stating his opinion that the request was motivated by a "fee arrangement" with counsel's former partner (who was plaintiff's original lawyer). Delle Fave also charged that the increased fee application was due to his refusal to pay an additional $5,000 to Van Dorn's secretary. These accusations were denied by counsel and, in any event, have nothing to do with the court's determination of a "reasonable fee in light of all the circumstances." R. 1:21-7(f) and DR 2-106(A).
At the initial hearing on May 4, 1984 the court questioned some of the disbursements used in the above calculation and requested additional information and calculations concerning the workers' compensation aspect of the matter. Van Dorn's supplemental affidavit included the information shown above, plus a calculation of the "net benefit" to plaintiff from the workers' compensation proceedings of $46,225.66. This latter figure included an undetailed assertion that the "present value" *561 of the future compensation payments released was $35,000. The result was an asserted net aggregate recovery of $274,187.55 and a new calculation under old R. 1:21-7(c) of allowable counsel fees of $61,884.75. The requested flat 1/3 fee was now $91,984.93 or an increase of $7,074.30 over the original $84,320.63 requested.
Another supplemental affidavit by Mr. Van Dorn was received a day before the May 25, 1984 final hearing  and indicated that after discussion with Marc C. Bateman, plaintiff's counsel on the fee application, the request was being reduced to 30% of $274,187.55 or $82,256.26. Bateman said that he and plaintiff concurred, but Delle Fave testified to the contrary. The bottom line was that plaintiff wanted the court to decide a proper fee.

III. The Net Aggregate Recovery

A. Gross Recovery
The initial application included the U.S.F. & G. payment in connection with disposition of the workers' compensation aspects of the case and the supplemental application substituted a revised "net benefit" thereof. Where release of a workers' compensation lien is inextricably involved with a third-party action settlement, calculations under R. 1:21-7(c) and (f) must be made in accordance with McMullen v. Maryland Cas. Co., 127 N.J. Super. 231 (App.Div. 1974), aff'd 67 N.J. 416 (1975). See also Pacillo v. Harris Mfg. Co., 182 N.J. Super. 322 (Law Div. 1981). In both of those cases there was no choice, since the workers' compensation carrier was also one of the liability carriers in the third-party action. The present case, however, involves different considerations. Although settlement of U.S.F. & G.'s lien was necessary before the third-party action could be favorably settled, the $25,000 cash payment to plaintiff, in addition to waiver of its lien, makes it perfectly clear that this was in consideration of plaintiff's waiver of rights to future total and permanent disability payments under N.J.S.A. 34:15-12b. Any counsel fee in connection with the $25,000 *562 payment by U.S.F. & G., or the asserted "net benefit" to plaintiff of $46,225.66 from this aspect of the compensation proceedings, should be awarded by the judge of compensation. Counsel fee considerations are different in workers' compensation matters. N.J.S.A. 34:15-64; Wright v. Plaza Ford, 164 N.J. Super. 203 (App.Div. 1978). Accordingly, on this R. 1:21-7(f) application, the gross recovery is the $235,000 paid by defendants in this third-party product liability case.

B. Disbursements
R. 1:21-7(d) requires deduction of disbursements to get the "net sum recovered" for fee calculation purposes. Disbursements include "investigation expenses" and "expenses for expert or other testimony or evidence," whether advanced by the attorney or client, but should not include ordinary law office overhead expenses or general educational material reusable for other cases. It is also improper to deduct as disbursements (and then seek reimbursement therefor) expenses for legal research which is part of an attorney's job in earning his fee. Accordingly, the following scheduled deductions are disallowed for purposes of the contingent fee calculation:

 8/7/80 Legal Materials $ 75.00
 10/21/81 Legal Research 75.00
 12/14/81 Legal Research 50.00
 9/14/82 Research Materials 100.00
 10/31/83 Legal Research 293.76
 "Unallocated Expenses  Xerox,
 Travel, Telephone, Postage" 250.00
 _______
 $843.76
 =======

The correct total of deductions is $6,194.35 ($7,038.11 less $843.76) and the R. 1:21-7(d) net sum recovered is $228,805.65 ($235,000 less $6,194.35).

IV. The Reasonable Counsel Fee
At the hearing on this matter, plaintiff affirmed his record statement to the trial judge to the effect that he was satisfied with his counsel's service. The affidavit of counsel *563 detailed thorough preparation of the case for trial against formidable adversaries. Unfortunately, time records were not kept and the situation is governed by the guidance contained in Bolle v. Community Memorial Hospital, et. al., 145 N.J. Super. 593 (App.Div. 1976). Time records are usually essential to the practice of law, at least where increased fee applications are to be made pursuant to R. 1:21-7(f). Burd v. Hackensack Hospital Assoc., 195 N.J. Super. 35 (Law Div. 1984). The problem with estimates is the absurd results that may attend such unreliable figures. In Burd they worked out reasonably, but here Van Dorn estimated 1200-1500 hours of work, and there can be no quarrel with his usual billing rate of $85-100 an hour. But 1500 hours at $100 would total $150,000 or 66% of the net recovery of $228,805.65, and 1200 hours at $85 would total $102,000 or 46% of the net recovery. Such results would be untenable.
There may also be a misconception that the higher R. 1:21-7(c) scale, effective January 16, 1984, will be routinely applied retroactively. The Supreme Court has decided otherwise, although relief is still available in appropriate cases under R. 1:21-7(f). To obtain the maximum aggregate marginal benefits for both attorneys and clients, this court has several times increased the old 10% R. 1:21-7(c)(6) multiplier to 20%. Merendino v. FMC Corp., 181 N.J. Super. 503 (Law Div. 1981) and cases cited in Burd v. Hackensack Hospital Assoc., supra. In this case, all of the recovery is subject to multipliers of 20% or higher under the old rule. Further increases must be reserved for truly exceptional situations as where new law is established on appeal, Buckelew v. Grossbard, 189 N.J. Super. 584 (Law Div. 1983); or where a trial, appeal, and retrial are required, Harris v. Boland, 193 N.J. Super. 737 (Law Div. 1983). Still another situation that might warrant increases above R. 1:21-7(c) provisions is a successfully negotiated structured settlement that produces documented tax-savings and security protection as in Merendino, supra; Landgraf v. Glasser, 186 N.J. Super. 381 (Law Div. 1982); Tobias v. Autore, 182 N.J.Super *564 328 (Law Div. 1982) and Pettiford v. Eskwitt, 189 N.J. Super. 485 (Law Div. 1983). Here, future workers' compensation benefits excludible from gross income for federal [I.R.C. § 104(a)(1)] and New Jersey [N.J.S.A. 54A:6-6a.] tax purposes have been surrendered for a lump-sum award that presumably will produce taxable income (although the lump-sum should be tax-free). Although tax-exempt income may be earned, the higher tax savings available through a structured settlement [under I.R.C. § 104(a)(2) and N.J.S.A. 54:6-6b] were not obtained. Apparently, an early effort was made to secure a structured settlement, but the fact remains that the failed attempt cannot be considered as a reason to increase counsel fees above the R. 1:21-7(c) percentages.
For all of these reasons, the counsel fee shall be as provided under old R. 1:21-7(c) using the above calculated net sum recovered of $228,805.65:

 R. 1:21-7(c) % On Fee
 (1) 50 $ 1,000.00 $ 500.00
 (2) 40 2,000.00 800.00
 (3) 33 1/3 47,000.00 15,666.67
 (4) 25 50,000.00 12,500.00
 (5) 20 128,805.65 25,761.13
 ___________ ___________
 $223,805.65 $ 55,227.80
 =========== ===========

In addition to the counsel fee of $55,227.80, counsel is entitled to reimbursement of disbursements of $6,194.35. With respect to the workers' compensation claim, counsel is entitled to be paid the fees awarded on September 20, 1983, and in the light of this determination as to the third-party action, may reapply to the judge of compensation for possible further allowance in connection with the settlement under N.J.S.A. 34:15-20.
The submitted order has been completed in accordance with the foregoing, and both counsel should file copies of all papers on this application with the Administrative Office of the Courts pursuant to R. 1:21-7(f).
NOTES
[1] Apparently rounded.