293 N.J. Super. 119 (1996)
679 A.2d 728
ESTATE OF IRENE L. PINTER, DECEASED BY THE EXECUTRIX OF HER ESTATE, LISA MARIE PINTER, AND LISA MARIE PINTER, FRANK L. PINTER AND JOANNE M. PINTER, INDIVIDUALLY, PLAINTIFFS,
v.
THERESA McGEE, MARK ALAN WARNER AND ESTATE OF FRANK PINTER, DEFENDANTS. ANGELO TISO AND LIBERA TISO, PLAINTIFFS,
v.
THERESA McGEE, MARK ALAN WARNER AND ESTATE OF FRANK PINTER, DEFENDANTS. ESTATE OF FRANK P. PINTER, DECEASED, BY THE EXECUTRIX OF HIS ESTATE, LISA MARIE FRASER (FORMERLY PINTER), AND LISA MARIE FRASER, FRANK L. PINTER AND JOANNE M. PINTER, INDIVIDUALLY, PLAINTIFFS,
v.
THERESA M. McGEE AND MARK A. WARNER, DEFENDANTS. VOORHEES & ACCIAVATTI, ESQS., APPELLANTS.
Superior Court of New Jersey, Appellate Division.
Submitted May 1, 1996.
Decided August 1, 1996.
*121 Before Judges SHEBELL, STERN and NEWMAN.
Voorhees & Acciavatti, attorneys for appellants Voorhees & Acciavatti (William W. Voorhees, Jr., of counsel and on the brief).
Clemente, Dickson & Mueller, attorneys for respondents Estate of Irene L. Pinter, Lisa Marie Pinter, Frank L. Pinter and Joanne M. Pinter (Patrick D. Tobia, of counsel and on the brief).
The opinion of the court was delivered by STERN, J.A.D.
Plaintiff law firm appeals from a judgment of the Law Division in favor of the estate of Irene Pinter "dismissing with prejudice any and all claims for a legal fee by the [law firm] against the [estate]...." The underlying litigation, which gave rise to the firm's claim for attorney's fees, involved an automobile negligence-wrongful death action filed on behalf of the estate by the firm in 1990.
In November 1989, Andrew Fraser started employment as an associate attorney with the firm. At that time, Fraser was engaged to be married to Lisa Pinter (now Lisa Fraser), daughter of Irene and Frank Pinter who were killed in an automobile accident in February 1990. Lisa Pinter was named executrix of her parents' estates. In March 1990 Fraser had a conversation *122 with William Voorhees, "the sole equity partner in the firm and the only partner authorized to commit the firm on the question of a fee," regarding the representation of the estates in connection with the automobile negligence-wrongful death matter (generally called the "Tiso case" because of a consolidated complaint).
Shortly thereafter, with Voorhees' approval, the firm assumed the representation of the estate of Irene Pinter in the Tiso matter. Fraser was permitted to handle the case with the assistance and supervision of an experienced senior associate, Robert McAndrew.[1] Andrew Fraser and Lisa Pinter were subsequently married.
Fraser maintained a record of the time spent on the case. He submitted these timesheets along with those on other cases and, pursuant to a billable hour incentive arrangement, received a bonus in 1991 of $1,732.50.[2]
In December 1992, Fraser left Voorhees & Acciavatti and became associated with another firm. On January 13, 1993, a substitution of attorney was filed. The Tiso case was ultimately settled by Fraser's new firm in February 1993.
When Fraser decided to leave the firm, a dispute arose between plaintiff and Fraser with regard to attorney's fees in connection with the case. Fraser and Voorhees disagreed about their understanding of the fee arrangement. On April 13, 1993, a consent order was entered placing $68,996.92 from the proceeds of the settlement in escrow "until such time as there is agreement among *123 the attorneys for plaintiffs Pinter, past and present, on the proper allocation of attorneys' fees...."[3]
An evidentiary hearing was held on the question of "counsel fees." Fraser testified that during his meeting with Voorhees regarding the firm's undertaking of the case, Voorhees was agreeable to the representation, but wanted Fraser to work closely with McAndrew, a lawyer with considerable experience in tort litigation. According to Fraser, Voorhees indicated he could handle the case with McAndrew's supervision "on a no fee basis as a professional courtesy." Voorhees only expected him to "keep current ... on all of [the] expenses associated with the case."
Voorhees testified as to a different understanding of the fee agreement. He advised Fraser that the firm would give him a "professional courtesy discount as [they] would with any other attorney in the firm on any kind of a legal matter ... which the firm handled on behalf of the close family member." According to Voorhees,
I suggested to him that the appropriate way to proceed was to take a look and see what the end result was, take a look and see how much effort the firm had to put into it, and that we would arrive at an appropriate discount of  for the normal contingent fee. And [Fraser] agreed to that.
Lisa Fraser and former attorneys at the firm testified on behalf of the estate. They related their understanding that the firm was going to undertake the representation of the estate on a "no-fee" basis as a "professional courtesy." However, they were not privy to the discussion about fees between Voorhees and Fraser. Diane Acciavatti testified on behalf of the firm. She recalled that because Fraser "was an associate of the firm that we would consider making some reduction in the full contingency fee when the case was concluded."
*124 Judge Reginald Stanton concluded that where Rule 1:21-7 "is not followed, the consequence should be that no fee at all is recoverable," and because of the firm's "failure to have an agreement for a contingent fee in writing ... there [could] be no contingent fee." He stated that while sometimes "there should be a fee of some kind allowed  a quantum meruit fee in the broad sense" despite the absence of a written retainer, that should occur where "services were nevertheless rendered under circumstances where everybody understood there was to be some payment," such as in the related litigation which the firm undertook on behalf of the estate. Judge Stanton found, however, that this was not such a case because "there's a very fundamental disagreement as to whether there would be any payment at all." He concluded:
In this case, we have a violation of [R. 1:21-7]. But, we  we have the violation of the Rule under circumstances where it is not clear that there was to be compensation. It's not clear that there was to be [any] compensation.
Judge Stanton found that there had been an honest misunderstanding between Fraser and Voorhees, "the senior partner in the firm of Voorhees and Acciavatti ... the managing partner and the sole partner with authority to make decisions with respect to fee arrangements between the firm and the clients," and that "there [could] be no fee recovered" because "the absence of a writing should count severely against the party who is responsible under [R. 1:21-7] for making sure that there was a writing; namely, the law firm."
We affirm substantially for the reasons expressed by Judge Stanton, and add the following.
R. 1:21-7 does not require that all compensation in tort actions must be by contingent fee. See R. 1:21-7(b). See also RPC 1.5(a)(c). But where, as here, the firm expected its compensation to be "contingent" upon the recovery, see R. 1:21-7(a), the contingent fee agreement must be in writing and in compliance with the Rule. As Voorhees testified that he expected to be compensated on a contingency basis, even though with a "discount," the firm was obliged to comply with the Rule. Fraser, the *125 inexperienced new associate, was to be supervised in his handling of the matter by an experienced attorney in the firm. Any improper conduct by Fraser cannot excuse the firm's non-compliance with its responsibility to the client. In any event, the firm is responsible for its conduct, and any action the firm has against Fraser must be pursued in an action against him (and we understand one is pending), not against the estate.
R. 1:21-7 reads, in pertinent part:
(a) As used in this rule the term "contingent fee arrangement" means an agreement for legal services of an attorney or attorneys, including any associated or forwarding counsel, under which compensation, contingent in whole or in part upon the successful accomplishment or disposition of the subject matter of the agreement, is to be in an amount which either is fixed or is to be determined under a formula.
(b) An attorney shall not enter into a contingent fee arrangement without first having advised the client of the right and afforded the client an opportunity to retain the attorney under an arrangement for compensation on the basis of the reasonable value of the services.
(c) In any matter where a client's claim for damages is based upon the alleged tortious conduct of another, including products liability claims, and the client is not a subrogee, an attorney shall not contract for, charge, or collect a contingent fee in excess of the following limits:
(1) 33 1/3% on the first $250,000 recovered;
(2) 25% on the next $250,000 recovered;
(3) 20% on the next $500,000 recovered; and
(4) on all amounts recovered in excess of the above by application for reasonable fee in accordance with the provisions of paragraph (f) hereof; and
(5) where the amount recovered is for the benefit of a client who was a minor or incompetent when the contingent fee arrangement was made, the foregoing limits shall apply, except that the fee on any amount recovered by settlement without trial shall not exceed 25%.
* * * * * * * *
(e) Paragraph (c) of this rule is intended to fix maximum permissible fees and does not preclude an attorney from entering into a contingent fee arrangement providing for, or from charging or collecting a contingent fee below such limits. In all cases contingent fees charged or collected must conform to RPC 1.5(a).
* * * * * * * *
(g) Where the amount of the contingent fee is limited by the provisions of paragraph (c) of this rule, the contingent fee arrangement shall be in writing, signed by both the attorney and the client, and a signed duplicate shall be given to *126 the client. Upon conclusion of the matter resulting in a recovery, the attorney shall prepare and furnish the client with a signed closing statement. Such contingent fee arrangement and closing statement, if any, shall be in the form prescribed by the Administrative Director of the Courts.
RPC 1.5(c) also governs contingent fee agreements. It provides:
A fee may be contingent on the outcome of the matter for which the service is rendered, except in a matter in which a contingent fee is prohibited by law or by these rules. A contingent fee agreement shall be in writing and shall state the method by which the fee is to be determined, including the percentage or percentages that shall accrue to the lawyer in the event of settlement, trial or appeal, litigation and other expenses to be deducted from the recovery, and whether such expenses are to be deducted before or after the contingent fee is calculated. Upon conclusion of a contingent fee matter, the lawyer shall provide the client with a written statement stating the outcome of the matter and, if there is a recovery, showing the remittance to the client and the method of its determination.
We agree with Judge Stanton that the firm violated R. 1:21-7 by entering into a contingent fee agreement without a written retainer signed by the firm and the client. The testimony of Voorhees clearly established that the firm's representation of Irene Pinter's estate in the Tiso matter would be pursuant to a reduced contingent fee arrangement. It is true that R. 1:21-7(c) sets the maximum limits for a contingent fee and that R. 1:21-7(g) requires a written agreement "[w]here the amount of the contingent fee is limited by the provisions of paragraph (c) of [R. 1:21-7]." It is also true that the contingency agreement, as contemplated by Voorhees, was for less than the maximum allowed under R. 1:21-7(c). We do not read the Rule to prohibit a contingent fee agreement which sets forth the maximum permissible fee, subject to the limits embodied in R. 1:21-7(c) and downward adjustment upon disposition of the case. However, a writing was required because "the amount of the contingent fee [was] limited by the provisions of paragraph (c)." In any event, RPC 1.5(c) requires that any contingent fee "be in writing and shall state the method by which the fee is to be determined."
While quantum meruit recoveries by law firms have been permitted by our courts, they do not involve circumstances in *127 which the Rules have been violated. See Buckelew v. Grossbard, 189 N.J. Super. 584, 587, 461 A.2d 590 (Law Div.) (R. 1:21-7 application for excess payment and allocation of fee under written contingent fee agreement), aff'd o.b., 192 N.J. Super. 188, 469 A.2d 518 (App.Div. 1983). See also Cohen v. Radio-Electronics Officers, 275 N.J. Super. 241, 645 A.2d 1248 (App.Div. 1994) (quantum meruit recovery permitted where attorney was discharged by client in a matter pursuant to fixed retainer agreement); Dinter v. Sears Roebuck & Co., 278 N.J. Super. 521, 651 A.2d 1033 (App.Div. 1995) (no recovery by attorney for fees following a successful disposition by another attorney after the representation was terminated by counsel's refusal to appeal an unsuccessful verdict, although he or she may still be entitled to reimbursement for costs and disbursements advanced on behalf of the client). But see Delle Fave v. Sanitation Equip. Corp., 197 N.J. Super. 555, 485 A.2d 703 (Law Div. 1984) (setting the fee where there was no written agreement, but not exploring the question before us).
In La Mantia v. Durst, 234 N.J. Super. 534, 542-43, 561 A.2d 275 (App.Div. 1989), certif. denied, 118 N.J. 181, 570 A.2d 950 (1989), we recognized the significance of the efforts and work of the initial firm which a litigating attorney leaves to join the firm which resolves a tort case. We used a quantum meruit approach to resolve "disputes between incoming and outgoing attorneys" in such matters. Id. at 536, 561 A.2d 275. But there the firm which initially represented plaintiff prior to disposition had complied with the Rule.[4] In La Mantia the successor firm had no retainer agreement, and we expressed our "concern[] with the lack of an agreement" between it and plaintiff. But "the gross fee ha[d] already been adjudicated," id. at 544, 561 A.2d 275, and the partner in the successor firm had represented plaintiff under the retainer agreement with the first firm. We, therefore, permitted both firms to recover.
*128 "In light of the unique and special relationship between an attorney and a client, ordinary contract principles governing agreements between parties must give way to the higher ethical and professional standards enunciated by our Supreme Court. A contract for legal services is not like other contracts." Cohen v. Radio-Electronics Officers, supra, 275 N.J. Super. at 259, 645 A.2d 1248. Here, the firm's failure to memorialize its contingent fee arrangement with the estate violates R. 1:21-7 and RPC 1.5(c), and we cannot sanction circumvention of the rule by permitting recovery on a quantum meruit basis. We do not preclude, however, an application to the trial judge for actual out-of-pocket disbursements.
Affirmed.
SHEBELL, P.J.A.D., concurring.
I concur in the affirmance only for the reasons expressed from the bench by Judge Stanton. However, I do not agree with the inference raised in the majority opinion that in the absence of a written contingency fee agreement no recovery based upon principles of quantum meruit may be permitted in other circumstances. I would hold that failure to comply with the Contingent Fee Rule, R. 1:21-7, merely bars the award of a contingent fee, but not a reasonable fee based on the services actually rendered.
NOTES
[1] The firm also undertook the representation of Irene Pinter's estate in connection with a related suit which is not involved in this dispute. Although no written retainer agreement was entered, "there was a mutual understanding that a fee was to be paid," and the trial court had to resolve no dispute about that matter. The firm did not bring an action on behalf of the Estate of Frank Pinter because he was the driver of the car in which Irene died, and his estate was made a defendant in her action.
[2] Associates received a bonus of $20 for each billable hour above 2,000 hours. An associate also received one-third of any fees collected in any case originated by him or her.
[3] After judgment was entered, all but $30,000 (plus interest) of the funds held in escrow were distributed to the estate. The motion judge concluded that the retained amount represented a fair recovery of attorney's fees if we were to uphold a quantum meruit claim.
[4] There is a clear indication in the opinion that there was a retainer agreement, 234 N.J. Super. at 536, 561 A.2d 275, although it is not clear if it fully complied with R. 1:21-7. See 234 N.J. Super. at 543-44, 561 A.2d 275.