**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-0528-19T3

SOBEL AND BROWN, PC,

    Plaintiff-Appellant,

v.

THOMAS HOXIE,

    Defendant-Respondent.

_____

> Argued December 14, 2020 – Decided  January 4, 2021
>
> Before Judges Fasciale and Mayer.
>
> On appeal from the Superior Court of New Jersey, Law Division, Bergen County, Docket No. L-4418-18.
>
> Illya D. Lichtenberg argued the cause for appellant.
>
> Thomas Hoxie, respondent, argued the cause pro se (Thomas Hoxie and Cory S. Poker, on the brief).

PER CURIAM

    Plaintiff appeals from an August 23, 2019 order granting summary judgment in favor of defendant, denying its cross-motion for summary

judgment, and dismissing its complaint with prejudice. The core issue is at what point did plaintiff cease to represent defendant, thereby triggering the running of the statute of limitations (SOL) for plaintiff's filing of this attorney-fee collection action. We affirm.

Defendant is a practicing attorney who employed plaintiff law firm to represent him in a matrimonial proceeding. Phillip Sobel (Sobel) was the only attorney in the firm who practiced matrimonial law. Sobel represented defendant until his death on February 20, 2012. After Sobel's death, plaintiff ceased operation. The last billable event by plaintiff occurred on March 22, 2012. Thereafter, plaintiff's sole remaining member, Joseph Brown (Brown), provided unbilled administrative services to defendant, such as trust distribution, but performed no legal work on his behalf.

On or about April 2, 2012, Brown transitioned to another law firm and had no interaction or connection with defendant. At no point did Brown inform the court that plaintiff was defunct or that he had transitioned. On April 13, 2012, defendant informed Brown, opposing counsel, and the matrimonial arbitrator by email that he was proceeding pro se in the matrimonial action. On June 1, 2012, plaintiff, through Brown, sent defendant a letter acknowledging that defendant was proceeding pro se and a signed substitution of counsel form to return for filing. On June 13, 2012,

A-0528-19T3

plaintiff sent a second substitution of counsel form, which he urged defendant to file. Defendant did not acknowledge or file either. As of June 15, 2012, when the judge entered the final judgment of divorce, plaintiff was still listed as counsel of record.

On June 27, 2012, defendant made a final payment to plaintiff for outstanding legal bills, leaving an unpaid balance of $38,984.66, which is the amount in dispute here. In June 2013 and April 2018, plaintiff sent defendant fee arbitration notices. On October 1, 2013, plaintiff sent defendant a final invoice for non-legal services billed through March 2012.

On June 14, 2018, plaintiff filed this attorney-fee collection action against defendant. Defendant moved for summary judgment on SOL grounds and plaintiff cross moved for summary judgment. On August 23, 2019, the motion judge entered an order and rendered a written opinion granting defendant's motion and denying plaintiff's cross-motion. The judge applied Protopapas[1] and concluded that the attorney-client relationship ended, at the latest, by April/May 2012. He determined that the last legal service was performed on March 22, 2012 when plaintiff's records show it last billed defendant for services. He rejected plaintiff's contention that the June 13, 2012 substitution was dispositive for SOL purposes. The judge reasoned

---

[1] Pellettieri, Rabstein & Altman v. Protopapas, 383 N.J. Super. 142 (App. Div. 2006), cited with approval in, In re Simon, 206 N.J. 306 (2011).

3

that the substitution was "a matter of form" because by April 2012, plaintiff was defunct, plaintiff's sole remaining attorney had transitioned to another firm, and all parties to the matrimonial litigation were made aware that defendant was proceeding pro se. The judge therefore held that plaintiff's attorney-fee collection complaint, which was filed on June 14, 2018, was time-barred by the applicable six-year SOL.

On appeal, plaintiff raises the following points for this court's consideration:

POINT I

THE TRIAL [JUDGE'S] DECISION CONSTITUTED PLAIN ERROR WHEN [HE] FAILED TO CONSIDER THIS CASE WAS AN ATTORNEY COLLECTION MATTER AGAINST A CLIENT BY HOLDING:

(1) THE [SOL] BEGAN TO RUN PRIOR TO THE REPRESENTATION TERMINATING OR THE MATTER BEING CONCLUDED[.]

(2) FAILING TO FIND THE [SOL] WAS TOLLED DURING THE FEE ARBITRATION NOTICE PERIOD[.]

POINT II

THE [SOL] HAD NOT BEGUN TO RUN UNDER CONTRACT LAW PRINCIPLES AS IT BEGAN TO RUN AT:

(1) THE TIME THE FINAL PAYMENT WAS MADE ON JUNE 27, 2012[.]

(2) THE FINAL PAYMENT[,] WHICH WAS MADE ON JUNE 27, 2012, RESET THE [SOL.]

A-0528-19T3

(3) THE FINAL INVOICE, SENT ON OCTOBER
1, 2013, BEGAN THE RUNNING OF THE [SOL.]

The judge properly applied Protopapas and determined that the attorney-client relationship had ended by, at the latest, April/May 2012, and properly concluded that plaintiff's claims were barred by the SOL. Moreover, general contract principles are inapplicable here because the Protopapas rule supersedes them in cases involving attorney-client disputes.

I.

We first address plaintiff's contention that the trial judge erred in determining that the attorney-client relationship ended by, at the latest, April/May 2012. Plaintiff maintains that the trial judge misinterpreted and improperly applied Protopapas because there was no clean break in the attorney-client relationship and services did not conclude until resolution of the matter on June 15, 2012.

We review the grant of summary judgment applying the same standard as the trial judge. Templo Fuente De Vida Corp. v. Nat'l Union Fire Ins. Co. of Pittsburgh, 224 N.J. 189, 199 (2016). Summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact

5

challenged and that the moving party is entitled to a judgment or order as a matter of law." Ibid. (quoting R. 4:46-2(c)).

To determine whether there are genuine issues of material fact, the court must consider "whether the competent evidential materials presented, when viewed in the light most favorable to the non-moving party, are sufficient to permit a rational factfinder to resolve the alleged disputed issue in favor of the non-moving party." Davis v. Brickman Landscaping, Ltd., 219 N.J. 395, 406 (2014) (quoting Brill v. Guardian Life Ins. Co. of Am., 142 N.J. 520, 540 (1995)). "An issue of material fact is 'genuine only if, considering the burden of persuasion at trial, the evidence submitted by the parties on the motion, together with all legitimate inferences therefrom favoring the non-moving party, would require submission of the issue to the trier of fact.'" Grande v. St. Clare's Health Sys., 230 N.J. 1, 24, 164 (2017) (quoting Bhagat v. Bhagat, 217 N.J. 22, 38 (2014)). We see no issue as to any material fact that would preclude summary judgment on SOL grounds here.

New Jersey's SOL requires that a claim for breach of contract be filed within six years from the date that the cause of action accrues. See N.J.S.A. 2A:14-1. However, "[a] contract for legal services is not like other contracts." Estate of Pinter by Pinter v. McGee, 293 N.J. Super. 119, 128 (App. Div. 1996) (citing Cohen v. Radio-Electronics Officers Union, Dist. 3, 275 N.J. Super. 241, 259 (App. Div.

1994)).  In Protopapas, we explained that because of "the unique and special relationship between an attorney and a client, ordinary contract principles governing agreements between parties must give way to the higher ethical and professional standards enunciated by our Supreme Court."  383 N.J. Super at 150 (quoting Estate of Pinter by Pinter, 293 N.J. Super. at 128).  In Protopapas, which governs this attorney-fee collection matter, we set forth a bright-line rule that a cause of action accrues between an attorney and client "when the services are concluded or attorney-client relationship is ended, whichever occurs first."  Id. at 145.

The judge properly applied Protopapas and found that services effectively concluded on March 22, 2012.  The last invoice for new services which plaintiff billed defendant was dated March 31, 2012, which included the last attorney service billed for March 22, 2012.  While plaintiff performed administrative services for defendant after this period, such as making final distributions of assets from the attorney trust account to himself and opposing counsel, these services did not serve to maintain the attorney-client relationship. The judge noted—and we agree—that any later "'handling' of [defendant's] matrimonial file by Brown was simply administrative, not performance based" and occurred "after [plaintiff] knew [defendant] was representing himself."  Plaintiff indeed performed no legal work for defendant after March 2012.

A-0528-19T3

Plaintiff argues that the trial judge was required to use the June 15, 2012 judgment of divorce as the operative date legal services ended. We conclude this argument lacks a proper legal basis as it is premised on an erroneous reading of Protopapas which conflates the conclusion of services with conclusion of the matter. In Protopapas we noted that the SOL begins to run when "the matter is concluded," id. at 153, but we also noted "the [SOL] . . . commences when the services are concluded," id. at 145, and "absent completion of services . . . the attorney-client relationship must be terminated[.]" Id. at 151. Thus, it is clear that the meaning is the same, and both connote that services end when plaintiff is no longer doing the legal work for which it was hired to do. Contrary to plaintiff's assertion, nothing in Protopapas requires that the judge use the June 15, 2012 judgment of divorce as the trigger here, which in this case was the conclusion of the matter.

Despite the Protopapas rule that a judge need only consider the event which occurs first—which in this case was services concluding—the judge also determined that the attorney-relationship terminated by, at the latest, April/May 2012. This determination is well-supported by the record. After Sobel's passing, plaintiff ceased operation as a law firm. On or about April 2, 2013, Brown transitioned to another firm. In his deposition testimony, Brown asserted that

A-0528-19T3

he is "not a matrimonial attorney and [defendant knew] that" and that it was why defendant "didn't retain [Brown] to represent [him] after [Sobel's] death." In fact, Brown referred defendant to a matrimonial attorney at his new firm. Defendant provisionally hired the attorney, but elected to proceed pro se. Though plaintiff was defunct, and Brown had transitioned to another firm, he failed to properly withdraw, substitute counsel, or otherwise inform the court that plaintiff was no longer operational.

On April 13, 2012, defendant sent an email to opposing counsel, the matrimonial arbitrator, and Brown, unequivocally advising them that he was "unrepresented" and "acting pro se." While he copied Brown on the email, defendant plainly stated "plaintiff's counsel may consider me to be unrepresented and communicate directly with me as necessary." Because defendant's counsel had died, plaintiff was defunct, and defendant notified the parties that he was proceeding pro se, there can be no question that the attorney-client relationship had terminated by, at the latest, April/May 2012.

Moreover, the judge properly rejected plaintiff's argument that the June 13, 2012 substitution of counsel was the operative date. Nearly three months after the date of the last billing for legal services and two months after being notified that defendant would be proceeding pro se, Brown sent defendant two

9

substitution of counsel forms, which were signed and dated. By email, Brown requested that defendant sign and file the second substitution. Plaintiff now argues that defendant's failure to acknowledge and file the substitutions meant there was no clean break in the attorney-client relationship. We see no merit in this argument, especially where plaintiff acknowledged in its June 1, 2012 letter that defendant was self-represented, improperly requested that defendant file the substitution himself, and otherwise failed to properly withdraw or substitute for three months.

Rule 1:11-2 governs the withdrawal or substitution of attorneys and states that

> prior to the fixing of a trial date in a civil action, an attorney may withdraw upon the client's consent provided a substitution of attorney is filed naming the substituted attorney or indicating that the client will appear pro se. If the client will appear pro se, the withdrawing attorney shall file a substitution.
>
> [R. 1:11-2(a)(1) (emphasis added).]

As such, plaintiff, as the withdrawing attorney, was responsible for filing the substitution in this case. Plaintiff cannot improperly shift this responsibility to the pro se defendant, then rely on defendant's failure to file to argue it did not know the status of the attorney-client relationship. To the extent that plaintiff now argues that an attorney-client relationship existed because it remained listed as counsel of

record, it invited that error. We reject the invitation to permit a discharged attorney to delay withdrawal or substitution, then rely on that delay to circumvent the SOL for purposes of suing the client. To do so would contravene the public policy goals underpinning the bright-line rule set forth in Protopapas. We note that even if this court found the June 13, 2012 substitution to be operative, plaintiff's complaint was filed beyond the six-year SOL.

As such, the judge properly determined that services concluded and the attorney-client relationship terminated by, at latest, April/May 2012, thus time-barring plaintiff's claims.

## II.

We now turn to plaintiff's alternative argument that under general contract principles the SOL began to run at various subsequent dates. Plaintiff specifically argues that the two fee arbitration notices tolled the SOL, the June 27, 2012 transfer of funds restarted the running of the SOL, and the October 1, 2013 invoice marks the date the SOL began to run.

The judge properly applied, and both parties assert in their merit briefs, that Protopapas controls this attorney-fee collection case. In Protopapas we explained that its bright-line rule for attorney-client disputes supersede standard contract principles, as evidenced by the numerous references to the uniqueness of the

attorney-client relationship and the Court's "commit[ment] to preserving the fiduciary responsibility that lawyers owe their clients." Protopapas, 383 N.J. Super. at 150 (citing Cohen, 146 N.J. Super. at 155). We see no reason to deviate from Protopapas here. We nevertheless add the following remarks.

We disagree with plaintiff's argument that the SOL was tolled during the thirty-day period following the June 2013 and April 2018 arbitration notices. Rule 1:20A-6 governs fee arbitration notice requirements and states that "[n]o lawsuit to recover a fee may be filed until the expiration of the [thirty-day] period herein giving [p]re-[a]ction [n]otice to a client[.]" A plain reading makes clear that the rule only requires that a suit not be filed and does not indicate that the fee notice requirement and the SOL are to be read together. As such, the two fee arbitration notices did not toll the SOL here.

We also disagree with plaintiff's argument that its withdrawal of the last funds from defendant's trust account restarted the running of the SOL. We note that plaintiff mischaracterizes the withdrawal as a "payment [by defendant] to plaintiff from defendant's account" when it was actually a payment from plaintiff's attorney trust account, which only Brown had access and could disperse from. The judge found that "[defendant's] ex-wife's attorney, in the matrimonial action, [sent] pro se [defendant] a [May 25, 2012] letter asking for the distribution of the counsel fee

award by [June 8, 2012]" but plaintiff failed to transfer until June 8, 2012 and "[n]o reason for the delay was evident." It is therefore clear that had plaintiff made the withdrawal when originally requested, or even within a month of the arbitrator's decision, no such argument could have been made here. Plaintiff cites no authority—and indeed none exists—for its proposition that the date of a last trust payment restarts the SOL here.

Finally, we disagree with defendant's characterization of the October 1, 2013 invoice as a "final bill" and reject its use as the trigger for the running of the SOL. Plaintiff to cites G & L Assocs., Inc. v. 434 Lincoln Ave. Assocs., 318 N.J. Super. 355, 360 (App. Div. 1999), for the proposition that "plaintiff's claim accrue[s] . . . when plaintiff billed defendant for services rendered[.]" In an inapt commercial transaction, we noted that the relevant inquiry in determining when a cause of action accrues is "when did the party seeking to bring the action have an enforceable right." Id. at 359. Plaintiff in G & L Assocs. demanded payment four years after the first bill and "had numerous contacts with [defendants]" about money owed, like here, yet we found that this did not serve to restart the SOL period. Id. at 358. Even in a traditional contract setting, we found that the cause of action accrued when the client was first billed for services rendered. Id. at 360.

A-0528-19T3

Here, the last invoice from plaintiff which billed defendant for a newly rendered legal service was the March 25, 2012 invoice, for March 22, 2012 services. All later invoices, such as the final October 1, 2013 invoice, were merely statements of account as of September 2, 2011 through March 25, 2012, which added interest but did not bill for any new legal services. Thus, under G & L Assocs., any claim would effectively stem from the March 25, 2012 bill. Under the retainer agreement, which plaintiff argues should control under general contract principles, the invoice would have been due within thirty days. Therefore, the cause of action would have accrued within thirty days of March 25, 2012, not thirty days of the final October 1, 2013 invoice for previously rendered services. Thus, even if this court were to apply general contract principles, plaintiff's complaint would still have been filed well outside the six-year SOL.

Affirmed.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION

14

A-0528-19T3