189 N.J. Super. 584 (1983)
461 A.2d 590
PATRICIA J. BUCKELEW, PLAINTIFF,
v.
PAUL J. GROSSBARD, M.D., DEFENDANT.
Superior Court of New Jersey, Law Division Bergen County.
Decided April 18, 1983.
*585 Emanuel Needle for plaintiff on appeal and motion (Kohn & Needle, attorneys).
Joe Maran for plaintiff on trial and cross-motion (Zarin & Maran, attorneys).
SIMPSON, A.J.S.C.
This is an application under R. 1:21-7(f) for approval of attorneys' fees in excess of the contingent fees allowable pursuant to R. 1:21-7(c), and for allocation thereof between successive counsel in a medical malpractice action. Much of the history of this case appears in Justice Clifford's opinion for a unanimous Supreme Court in Buckelew v. Grossbard, 87 N.J. 512 (1981), that reversed the trial court's judgment notwithstanding verdict and remanded for a new trial.
Prior to the November 1, 1976 effective date of the present R. 1:21-7(c) contingent fee scale, plaintiff signed a contingent fee retainer with Lawrence S. Schwartz, Esq. providing for the then authorized maximums as follows:
(1) 50% on the first $1,000 recovered
(2) 40% on the next $2,000 recovered
(3) 33 1/3% on the next $47,000 recovered
(4) 20% on the next 50,000 recovered
(5) 10% on any amount recovered over $100,000
In 1975 Schwartz referred the case to Zarin and Maran, Esqs. (hereafter "Maran") and Joe Maran, Esq. handled the matter through trial and the judgment non obstante veredicto in July 1978. On August 16, 1978 plaintiffs signed a letter retaining Kohn, Soperstein & Needle, Esqs. (hereafter "Needle") that, in pertinent part, provided for a contingent fee "as provided by the rules of court"; that compensation of Maran "shall be paid out of any total fee realized from a successful recovery and settlement," and that Needle would negotiate same with Maran. The letter retainer did not make reference to the contingent fee rule sliding scale, but the November 1, 1976 amendment to R. 1:21-7(c) had increased from 20% to 25% the maximum fee on the *586 second $50,000 recovered in addition to other nonpertinent changes as to recoveries over $100,000. Since most of the attorneys' services took place after the current percentages of R. 1:21-7(c) became effective, it is appropriate to consider the R. 1:21-7(f) application in the light of the present scale. The case was ultimately settled for $100,000, Maran disbursements were $1,038 and Needle disbursements totalled $1,192.25. The net aggregate sum of recovery under R. 1:21-7(d) was therefore $97,769.75 which would yield an allowable fee under the current rule as follows:

R. 1:21-7(c) % On Allowable
(1) 50 $ 1,000.00 $ 500.00
(2) 40 2,000.00 800.00
(3) 33 1/3 47,000.00 15,666.67
(4) 25 47,769.75 11,942.43
 _________ _________
 $ 97,769.75 $ 28,909.10
 =========== ===========

Maran's application is for a 45% counsel fee with an allocation of 85% thereof to Maran and 15% to Needle. Plaintiff agreed with Needle's original application for a 33 1/3% fee payable wholly to Needle. At oral argument Needle finally suggested 90% for his firm and 10% for Maran. Applying these suggestions to the net aggregate recovery of $97,769.75 results in the following comparative calculations:

 Maran Needle
Recommendation of Total Share Share
 Plaintiff $32,589.92 0 $32,589.92
 Maran 43,996.39 $37,396.93 6,599.46
 Needle 32,589.92 3,258.99 29,330.93

The history of the case and the concurrence of plaintiff and Needle fully justify total attorneys' fees of $32,589.92 as reasonable in light of all the circumstances. R. 1:21-7(f). It was a difficult medical malpractice case involving a full trial, judgment n.o.v., affirmance by the Appellate Division, and *587 reversal by our Supreme Court with a remand for a new trial. A new rule of law was established in Buckalew v. Grossbard, supra at 528. The case was ultimately settled by Needle for the full insurance policy of $100,000. Although R. 1:21-7(d) provides that the permissible maximum contingent fee under R. 1:21-7(c) includes legal services on an appeal and any retrial, the combined services of Maran and Needle warrant the increased fee pursuant to R. 1:21-7(f). Murphy v. Mooresville Mills, 132 N.J. Super. 197 (App.Div. 1975). Plaintiff's concurrence with an increase to a flat 1/3 of the recovery is also entitled to consideration although not controlling. Murphy, supra at 200. Maran's assertion that the total fees should be 45% of the net recovery is not supported by persuasive evidence. He kept no time records at all and before trial suggested that plaintiff accept a $20,000 offer. Even after the $80,000 verdict, he advised Schwartz that the case should be settled for $30,000 because of the judgment n.o.v.
As to allocation of the approved fee of one-third of the net recovery, Maran's position is almost incomprehensible. He kept no time records, he lost the case, his client fired him, and he had nothing to do with the successive appeals to the Appellate Division and the Supreme Court. Needle documented 19,000 minutes of work (or 316.67 hours), won on appeal, established new law, prepared for retrial, settled for the full policy, and satisfied his client. In a situation such as this, a discharged or deceased attorney (or his estate) is entitled to recover in quantum meruit for his legal services. In re Poli, 134 N.J. Super. 222 (Cty.Ct. 1975). See, also, Annotations: "Limitation to Quantum Meruit Recovery, Where Attorney Employed Under Contingent Fee Contract is Discharged Without Cause," 92 A.L.R.3d 690 (1979); "Attorney's Death, Prior to Final Adjudication or Settlement of Case, as Affecting Compensation Under Contingent Fee Contract," 33 A.L.R.3d 1375 (1970). An attorney may be discharged at any time by his client. DR 2-110(B)(4). When this *588 happens the attorney is entitled to a fair and reasonable fee. Although time is not the only factor to be used in ascertaining a reasonable fee, it would assist in an allocation determination just as it would in connection with an R. 1:21-7(f) increased fee request. Bolle v. Community Memorial Hospital, 145 N.J. Super. 593, 596 (App.Div. 1976). It is not available in determining the comparative contributions of Maran and Needle to the ultimate successful outcome of this case, because only Needle kept such records. Comparing the original verdict of $80,000 with the $100,000 settlement is no indication of the comparative contributions, either, for several reasons. First of all, the settlement was limited by the available insurance coverage of $100,000. Secondly, the defendant was deceased and there was no indication of personal assets being available for further recovery. Thirdly, there were trial errors as to damages, so that on a retrial the proofs would have undoubtedly supported a higher damages award.
Under all of the circumstances, the best available measure of Maran's contribution is the $20,000 settlement figure he recommended before trial. This is the only settlement offer that both plaintiff and Maran agree was made. Deducting Maran's $1,038 disbursements results in a figure of $18,962 to which the approved 33 1/3 contingent fee percentage is applied  resulting in an approved reasonable fee for Maran of $6,320.66. The balance of the total fee of $32,589.92, or $26,269.26, is the approved reasonable fee for Needle. Counsel are also entitled to reimbursement of their disbursements in the amounts previously set forth, and Maran is responsible for any portion of his fee properly payable to Schwartz.
The submitted order has been completed in accordance with the foregoing and both counsel should file copies of their respective papers with the Administrative Office of the Courts in accordance with R. 1:21-7(f).