278 N.J. Super. 521 (1995)
651 A.2d 1033
RIKI DINTER AND ELLIOTT DINTER, PLAINTIFFS-APPELLANTS,
v.
SEARS, ROEBUCK & COMPANY, DEFENDANT, AND BERTRAM SIEGEL, AND SIEGEL & SIEGEL, INTERVENORS-RESPONDENTS.
Superior Court of New Jersey, Appellate Division.
Argued November 28, 1994.
Decided January 10, 1995.
*523 Before Judges PETRELLA, HAVEY and BROCHIN.
Bennett J. Wasserman argued the cause for appellants.
Bertram Siegel argued the cause for respondents Bertram Siegel and Siegel & Siegel (Bertram Siegel, of counsel; Todd Siegel, on the brief).
Frank P. Addas appeared on behalf of defendant Sears, Roebuck & Company (Addas & Potenza, attorneys; Mr. Addas, on the briefs).
The opinion of the court was delivered by PETRELLA, P.J.A.D.
On this appeal we decide what is in essence a fee dispute between successive trial attorneys, arising from an order of the trial court allocating fees following disposition of a negligence case. After a no cause of action in the first trial, and a reversal and remand following an appeal, the second trial attorney settled the underlying negligence action. The trial judge, over objection, awarded intervenor-respondent Bertram Siegel and his law firm of Siegel & Siegel a $45,000 quantum meruit fee, and $7,656.68 as reimbursement of costs and disbursements made by the Siegel firm prior to and during the trial on behalf of plaintiffs Riki and Elliott Dinter.
This appeal has its origins in a slip and fall negligence case which Siegel tried to a no cause of action before a jury in 1990.[1] The Dinters desired to appeal but Siegel would not proceed unless they forwarded the costs for appeal, particularly transcript costs, *524 despite Siegel's previous practice under the parties' contingent fee agreement of advancing costs at the trial level. The Dinters retained alternate counsel, appealed, and we reversed and remanded the case for another trial.[2] The Dinters thereafter retained Bennett J. Wasserman as their trial attorney under a new contingent fee agreement with him. Sears settled with the Dinters for $850,000 before trial. Siegel then claimed entitlement to a portion of the $218,226.79 due Wasserman as fees under his contingent fee agreement with the Dinters.[3]
The Dinters argue the Siegel firm is not entitled to a fee or any portion of Wasserman's fee. They assert that their contingent fee agreement with Siegel ended upon entry of the adverse judgment or by mutual agreement when the Siegel firm refused to advance the funds for transcripts for an appeal and instructed the Dinters to obtain new attorneys. The Dinters essentially argue that a quantum meruit award cannot be sustained here, particularly when there was a valid contingent fee agreement in effect. In the alternative, they argue that the Siegel firm breached the retainer agreement and terminated it by refusing to proceed with the appeal, except on new terms, and by refusing to file a notice of appeal. Finally, they argue that the award of quantum meruit fees is contrary to public policy and New Jersey Court Rules.

I.
The Dinters retained the Siegel firm in connection with Riki Dinter's slip and fall on November 30, 1987. Riki Dinter and *525 Siegel signed a pre-printed form contingent fee agreement[4] containing the following language:
* * * * * * * *
2. Legal Services. The Law Firm will protect your legal rights and do all necessary legal work to properly represent you in this matter.
3. Cost and Expenses. In addition to legal fees, you may be required to pay for expenses in connection with the institution and prosecution of your claim. Such expenses may include, among other things, experts' fees and expenses for other testimony or evidence, court costs, accountants' fees, appraisers' fees, service fees, investigators' fees, deposition costs, costs of briefs, transcripts on appeal and extraordinary photocopying, long-distance telephone and postage expenses. You will not be required to pay for usual and customary law office overhead expenses, such as local telephone charges, routine photocopying and postage costs and expenses associated with legal research.
4. Legal Fees. If the Law Firm recovers money for you, which is greater than your costs and expenses (see paragraph 3), you will pay the Law Firm a legal fee. The fee will be based on a percentage of the net recovery. Net recovery is the total recovered on your behalf, minus your costs and expenses, and minus any interest included in a judgment pursuant to R. 4:42-11(b). The fee will be as follows:
 33 1/3% of the first $250,000 net recovery;
 25% of the next $250,000 net recovery;
 20% of the next $500,000 net recovery.
Fees on net recoveries exceeding $1,000,000.00 will be determined by the court.
* * * * * * * *
Significantly, the contingent fee agreement here did not require Siegel to undertake an appeal on behalf of the Dinters. See R. 1:21-7(d).[5]
It is undisputed that from the inception of this slip and fall negligence case the Siegel firm had advanced the costs and *526 expenses of litigation. By the end of the first trial those expenses exceeded $7,000. After the adverse jury verdict, Siegel informed the Dinters that he would not initiate an appeal unless they advanced approximately $8,000 to cover the costs of transcripts for the appeal. The Dinters refused to pay for the transcripts and in a June 22, 1990 letter Siegel informed them that he would not handle the appeal. In that letter Siegel stated:
In accordance with rules of court, this law firm and myself are not required to take an appeal. We have determined that we will not take an appeal. If you wish to do so, it will require that you make appropriate arrangements to retain a law firm to represent both of you on an appeal. As I already said to you, the Notice of Appeal must be filed within the 45 days. We will, of course, cooperate with any counsel that you select for the taking of any appeal that you may file. [Emphasis supplied.]
Plaintiffs then sought to obtain another attorney to take the appeal. Despite Siegel's pledge to cooperate, he did not turn over the file to the Dinters' new attorney. He apparently also told that attorney that he would not file an appeal. One attorney wrote Siegel requesting that he file a notice of appeal to preserve the Dinters' right to appeal, but Siegel advised that he would not do so, perhaps because of the necessity to pay a filing fee and concomitantly advance a deposit for costs and order transcripts. See R. 2:5-3.
The Dinters ultimately retained Mark J. Friedman of the offices of Howard C. Truger to prosecute the appeal that resulted in our opinion in Dinter v. Sears, Roebuck & Co., 252 N.J. Super. 84, 599 A.2d 528 (App.Div. 1991), where we reversed and remanded the case because of the trial judge's ruling denying the Dinters' attorney access during the trial to written statements taken by an insurance investigator from Sears' employees. Those statements had not been requested in discovery[6] and Sears objected to producing them in response to an oral demand by Siegel at trial on the ground that they constituted attorney work product.
*527 Our decision reversing the jury verdict in the first appeal was based on a statement that was produced by Sears' attorney in accordance with our September 23, 1991 request at oral argument. That statement was promptly made available to the Dinters' attorney before our November 14, 1991 decision in that appeal. See Dinter, supra (252 N.J. Super. at 89 n. 2, 599 A.2d 528). Siegel obtained a copy of the statement, and over Friedman's protestations, and prior to our resolution of the appeal, filed a motion with the trial judge for a new trial based on a claim that the written statement by the Sears employee was newly-discovered evidence. Aside from any question of whether the statement could constitute newly-discovered evidence, procedurally, that motion was improper since the matter was pending in this court. See R. 2:9-1. The trial judge recognized that he was without jurisdiction, absent a remand, and rejected the motion on that basis.
After our November 14, 1991 reversal of the jury verdict, the Dinters retained Wasserman and entered into a new contingent fee retainer agreement with him. On November 31, 1991, the Dinters wrote Siegel and requested that he send the entire file to their new attorney. They again wrote Siegel on December 11, 1991, requesting the file[7] and reminding Siegel that they had retained other attorneys and that Siegel was to take no further steps on their behalf. Specifically they said:
You are no longer authorized to hold yourself out as our attorney or to make Court appearances as our attorney. You may not engage in any discussions with the representatives of Sears Roebuck regarding our case, including their attorney, Mr. Addas. Specifically, you are not authorized to make any settlement demands or receive any settlement offers on our behalf.
Siegel still did not send the file to the Dinters' new attorney as requested. On January 24, 1992, the trial judge signed an order compelling Siegel to turn over the file, and postponing Siegel's *528 claim for services and disbursements to a later date. When Siegel did not comply, the trial judge entered another order on February 13, 1992 again ordering Siegel to turn over the case file and to deliver other discovery in his possession.
The new trial attorney, Wasserman, conducted additional discovery and obtained various court orders to compel Sears to provide certain additional discovery items. Eventually, the case was settled before trial for $850,000. On July 23, 1993, the trial judge entered an order directing Sears to pay the settlement, but to retain $218,226.79, the amount due for fees and disbursements under Wasserman's contingent fee agreement, in an interest-bearing account, for potential apportionment between Wasserman and Siegel. The trial judge subsequently entered the disputed January 3, 1994 order which granted Siegel a quantum meruit fee and reimbursement of costs.
Plaintiffs rely on paragraphs numbered two and three of the contingent fee agreement in arguing that Siegel breached the agreement, and thus is not entitled to compensation, because his firm had a duty, as established by Siegel's prior practice of advancing costs and the Dinters' understanding, to proceed with the appeal, and continue to pay the costs on appeal. There is, however, insufficient basis in the agreement to conclude that Siegel had an obligation to proceed with an appeal. The reference to expenses which might include "transcripts on appeal" is in the context of discretion in advancing costs as well as to a potential claim for reimbursement.
We recognize that where there is an ambiguity with respect to the interpretation of an agreement between an attorney and client, the agreement is ordinarily interpreted in favor of the client. See Jersey Land & Development Corp. v. United States, 342 F. Supp. 48 (D.N.J. 1972); Samuel Williston, A Treatise on the Law of Contracts § 1285A, at 931 (3d ed. 1967). Here, however, it is clear that Siegel could and did refuse to go forward with the appeal after the entry of the verdict, and the retainer agreement terminated with the adverse verdict and entry of judgment for the *529 defendant. There was, therefore, nothing left for the Siegel firm to do under its agreement and its refusal to proceed with the appeal was a recognition of this. See Shaw v. Manufacturers Trust Co., 68 N.Y.2d 172, 507 N.Y.S.2d 610, 499 N.E.2d 864 (1986). Moreover, any suggestion that Siegel would only have gone forward with the appeal if the Dinters advanced the costs of the transcripts, in the face of his course of conduct and practice of advancing all the other fees, would essentially constitute a proposal to proceed with the appeal on new terms that had not been followed at the trial level. Construing the agreement most favorably to the Dinters, as we would have to do here, such a proposal would be either confirmation of the agreement's termination or a breach of the agreement. See Shaw, supra (507 N.Y.S.2d at 612, 499 N.E.2d at 865-66).

II.
Contingent fee agreements are subject to regulation and control under the Court Rules promulgated by our Supreme Court. See R. 1:21-6(b)(3) through (9), and R. 1:21-7. Ordinarily, an attorney who undertakes to represent a client under a contingent fee agreement is only entitled to an attorney's fee (as distinguished from potential reimbursement of reasonable and necessary costs and disbursements advanced on behalf of the client) in the event the attorney prevails. The written contingent fee agreement and the Court Rules govern the relationship of the parties. An attorney may advance costs for instituting litigation, but he is not required to fund or finance litigation.
Historically, a lawyer was not authorized to finance litigation or acquire a proprietary interest in a cause of action. To do so was considered champerty and maintenance. 14 Am.Jur.2d Champerty and Maintenance § 1, at 842. This doctrine has been modified or not applied in New Jersey where it clashed with contingent fee type contracts and the advancement of costs and expenses. See Schomp v. Schenck, 40 N.J.L. 195, 201-207 (Sup.Ct. 1878); Hughes v. Eisner, 8 N.J. Super. 351, 72 A.2d 901 (Ch.Div. 1950), reversed on *530 other grounds, 14 N.J. Super. 58, 81 A.2d 394 (App.Div. 1951). However, former Disciplinary Rule 5-103(B) required clients to remain ultimately liable for the expenses of litigation. This rule was relaxed in 1973, when DR 5-103(B), was amended.[8]
In conjunction with our present Court Rules, the Rules of Professional Conduct (which superseded the Disciplinary Rules) circumscribe contingent fee agreements. See RPC 1.5(a)(8), (c). RPC 1.8(e) states that: "A lawyer shall not provide financial assistance to a client in connection with pending or contemplated litigation." It goes on to provide an exception in discretionary terms with respect to advancing "court costs and expenses of litigation, the repayment of which may be contingent on the outcome of the matter; ..."[9] RPC 1.8(e)(1). This does not mean that an attorney is required to absorb the disbursements and costs of litigation where there is no monetary recovery. According to the comment to the Disciplinary Rule change, it affords the attorney an option not to have to pursue or sue his client for these items without violating ethical rules as they had been traditionally written.
The form contingent fee agreement used by Siegel thus provides in paragraph 3 (quoted in full above): "you may be required *531 to pay for expenses in connection with the institution and prosecution of your claim. Such expenses may include ... experts' fees and expenses ... court costs ... deposition costs, costs of briefs, [and] transcripts on appeal...."
Where an attorney is discharged by the client without good cause there may be an entitlement to a portion of an ultimate recovery based on quantum meruit, or perhaps other grounds. Any quantum meruit fee in such circumstances would emanate from services actually rendered at the request of and for the benefit of the client to date of discharge. See Buckelew v. Grossbard, 189 N.J. Super. 584, 461 A.2d 590 (Law Div.), aff'd o.b. 192 N.J. Super. 188, 469 A.2d 518 (App.Div. 1983) (contingent fee); In re Estate of Poli, 134 N.J. Super. 222, 338 A.2d 888 (Cty.Ct. 1975) (contingent fee); 7 Am.Jur.2d Attorney & Client § 298, at 321-322. There may also be some entitlement to quantum meruit where the attorney is discharged without good cause where there is a retainer agreement for a fixed period or specific matter. See Cohen v. Radio-Electronics Officers, 275 N.J. Super. 241, 252-253, 645 A.2d 1248 (App.Div. 1994) (fixed retainer agreement as contrasted with a contingent fee agreement).[10] In contrast, a discharge for good cause might not carry such entitlement.
Thus, if Siegel had been discharged without good cause by the Dinters before completion of his services under the contingent fee agreement he might well have been entitled to some fee based thereon or on quantum meruit. See Buckelew v. Grossbard, supra (189 N.J. Super. at 587-588, 461 A.2d 590); In re Estate of Poli, supra (134 N.J. Super. at 227, 338 A.2d 888). Of course, the client has the right to discharge the attorney with or without good cause, see Cohen, supra (275 N.J. Super. at 258, 645 A.2d 1248), but not necessarily without compensation.
*532 It is clear that an attorney who, acting pursuant to a contingent fee agreement, voluntarily withdraws from representation before or without achieving any recovery for his client is not entitled to be compensated for services rendered absent a breach by the client or some ethical reason which might have required the withdrawal. International Materials v. Sun Corp., 824 S.W.2d 890, 895 (Mo. 1992) has synthesized the usual rule:
The general rule is that a lawyer who abandons or withdraws from a case, without justifiable cause, before termination of a case and before the lawyer has fully performed the services required, loses all right to compensation for services rendered.
This rule applies with even greater force where the withdrawing attorney failed to earn the contingent fee, having achieved no recovery for the client. See Faro v. Romani, 641 So.2d 69 (Fla. 1994); Plaza Shoe Store, Inc. v. Hermel, 636 S.W.2d 53, 59-60 (Mo. 1982). Where the client elects to proceed with an appeal with a new attorney after the first attorney was unsuccessful at the trial level, it has been held that quantum meruit is not available because the lawyer completed his work at the trial level, albeit, unsuccessfully. Robinowitz v. Pozzi, 127 Or. App. 464, 872 P.2d 993, 996 (1994). The Pozzi court reasoned:
Although there are circumstances under which it could reasonably be expected that an attorney who uses the work of another attorney could be legally responsible for its value, we do not believe this case fits into that category.... [The client] is free to employ any attorney to pursue an appeal, assuming he wished to do so. Even if [the new attorneys] were enriched by [the first attorney's work], we conclude that [the new attorneys] were not "unjustly" enriched in the light of these facts, as a matter of law.
[Id.]
Here, we are satisfied that Siegel's retainer agreement terminated when he declined to prosecute an appeal for the Dinters and told them to retain another attorney if they wished to appeal. His relationship with the Dinters as their attorney in this matter terminated with the trial.[11] Of necessity, when Siegel *533 terminated his representation this also abrogated the applicability of the contingent fee agreement, except for his firm's claim for costs and disbursements. Siegel could not then have reasonably expected payment after he was terminated, and neither the Dinters nor Wasserman should reasonably have expected that Siegel would share in Wasserman's fee, if any, absent a clear agreement to that effect between the Dinters, Siegel and Wasserman. Nor are any contrary reasonable expectations implicated. See Robinowitz v. Pozzi, supra (872 P.2d at 995).
As we have indicated, a trial attorney is not required under our Rules of Court to take an appeal. See R. 1:21-7. Because there was no agreement which required Siegel to represent the Dinters on appeal, the attorney/client relationship terminated not only upon entry of the adverse judgment, but upon Siegel's express refusal to take an appeal, and even beyond this, the express confirmation by the Dinters of the fact that Siegel was no longer to represent them in any fashion in the matter.
In this case the trial judge in awarding quantum meruit relied on International Materials v. Sun Corp., supra (824 S.W.2d 890). However, that case is distinguishable because there the attorney withdrew from representation for "just cause." Here, Siegel withdrew and terminated his representation after the adverse jury verdict. He was free to do so under the Court Rules and his agreement with the Dinters.
Under paragraph number 4 of the contingent fee agreement Siegel and his firm were only entitled to a fee when a settlement or verdict in favor of his client in excess of the costs and expenses *534 was obtained. In this vein we find Vitale v. La Cour, 92 A.D.2d 892, 459 N.Y.S.2d 881, appeal dismissed, 59 N.Y.2d 607, 466 N.Y.S.2d 1027, 453 N.E.2d 552, appeal denied, 60 N.Y.2d 556, 468 N.Y.S.2d 1025, 455 N.E.2d 1265 (1983), persuasive. There, plaintiff's trial attorney was unsuccessful in his efforts and thus could not properly assert a claim for compensation under quantum meruit. The retainer agreement, as here, did not require the attorney to take an appeal. Since the attorney/client relationship terminated following the trial, there was no entitlement to a fee. Id. 459 N.Y.S.2d at 881-882. See also Holzberg v. Feverstein, 104 A.D.2d 971, 480 N.Y.S.2d 764 (1984). The Vitale court did recognize an entitlement to disbursements advanced on behalf of the plaintiff. Vitale, supra (459 N.Y.S.2d at 882).
Siegel argues that he and his firm were "retained by plaintiffs as trial counsel throughout the pendency of the appeal." Nothing in the record or in reason supports this contention. No affidavit or certification from the Dinters indicates that to have been the case. Until we decided the earlier appeal there was nothing properly before the trial court in this matter. This is so despite Siegel's inappropriate efforts before the first appeal was decided to invoke the jurisdiction of the trial court during the pendency of that appeal by moving for a new trial between the time the appeal was argued and our decision in that earlier appeal, whether or not he convinced the Dinters to allow him to make such a motion. We add that, although it might be inferred, nothing in the record indicates that occurred. Even so, Siegel's action was inappropriate. It was for appellate counsel to request a limited remand.
Of course, we recognize that Siegel's interest in the case might be heightened after oral argument of the first appeal because we had directed that the employee's statement be given to the court and to the Dinters' appellate attorney. As we observed, the appeal eventually turned on the content of that statement (which had previously been withheld at trial under a claim of attorney work-product). In any event, Siegel should not be compensated for attempting a motion which had little or no basis to succeed and *535 which was defective. Moreover, Siegel's efforts at that point could not have been undertaken pursuant to the former contingent fee agreement. Hence, any claim Siegel may have for services properly rendered, if any, at the explicit request or direction of the Dinters after termination of his contingent fee agreement would be against the Dinters personally, rather than against the amount to which Wasserman was entitled under his contingent fee agreement with the Dinters.
We reject Siegel's contention that he was entitled to a quantum meruit award under the circumstances of this matter for yet another reason. To permit such a recovery would potentially allow any attorney who completes his trial representation under a contingent fee agreement, without achieving a monetary recovery for the client, to refuse to prosecute an appeal, but nonetheless assert a quantum meruit claim if another attorney prosecuted the appeal and then obtained a favorable result. We do not construe either the contingent fee rules or the attorney/client relationship as contemplating such a result. Indeed, such an approach might also cause a prospective new attorney to pause before undertaking representation to prosecute an appeal or subsequent trial after a remand.
We also reject Siegel's claim that he is entitled to a contingent fee based on Sears' previous settlement offer during the course of the first trial, which offer was rejected by the Dinters. Siegel was clearly not entitled to a contingent fee based on a settlement offer that was rejected by his clients, whether he might have recommended acceptance or rejection of that offer. See 7A C.J.S. Attorney & Client § 320, at 615; cf. Buckelew v. Grossbard, supra (189 N.J. Super. at 588, 461 A.2d 590) (quantum meruit fee for discharged attorney calculated by reference to settlement figure he recommended before trial where the attorney kept no time records, ultimate recovery far exceeded the recommended settlement, and plaintiff, discharged attorney, and successor attorney agreed that discharged attorney would be paid from fee actually realized by successor attorney).
*536 We thus conclude that Siegel is not entitled to any fee for services either under his contingent fee agreement or on any quantum meruit basis. However, the Siegel firm is entitled to reimbursement for costs and disbursements advanced by it on behalf of the Dinters. If there is any dispute as to the necessity or reasonableness of those costs we leave that for resolution by the trial court.
In light of our decision, we need not reach the Dinters' argument that the judge's order granting Siegel a quantum meruit fee is contrary to New Jersey's public policy.
Reversed as to the quantum meruit fee award and affirmed as to costs and disbursements, subject to review by the trial court as to reasonableness and necessity.
NOTES
[1] We are informed that the Dinters turned down a $900,000 offer of settlement before or at the first trial.
[2] The history of the matter and our reversal of the jury verdict on somewhat narrow grounds is recounted in Dinter v. Sears, Roebuck & Co., 252 N.J. Super. 84, 599 A.2d 528 (App.Div. 1991).
[3] The Dinters have apparently received their portion of the settlement. The second trial attorney, Bennett J. Wasserman would receive $146,910.69 in attorney's fees and $18,659.42 for disbursements as a result of the order on appeal.
[4] The fee agreement recited that Riki Dinter rejected an alternative legal fee plan and accepted the contingent fee arrangement. It also stated: "The Law Firm may ask that the Court require you to pay a greater legal fee, if the agreed upon fee is too low in light of the time and effort which the Law Firm exerts on your behalf...."
[5] R. 1:21-7(d) states in relevant part:

The permissible fee shall include legal services rendered on any appeal or review proceeding or on any retrial, but this shall not be deemed to require an attorney to take an appeal.
[6] See Dinter v. Sears, Roebuck & Co., supra (252 N.J. Super. at 95-96, 599 A.2d 528).
[7] Of course, the pleadings were on file and were public records, and many of the documents had to be used in the appendix on the first appeal. At oral argument plaintiffs' attorney indicated in response to an inquiry from the court that new medical examinations and reports were needed to update Dinter's condition.
[8] See infra note 9.
[9] The philosophy set forth in RPC 1.8(e) is carried forward from the 1973 amendment of the predecessor Disciplinary Rules, specifically DR 5-103(B) as amended effective September 10, 1973. The RPC replaced the DRs effective September 10, 1984. The comment to the September 10, 1973 predecessor rule (DR 5-103(B)) stated the probable rationale for the change:

The substance of the change was the elimination of the requirement that the client remain ultimately liable for costs and litigation expenses. The change was apparently motivated by the universal practice by which an attorney, who represents a client on a contingent-fee basis, declines to sue his client for reimbursement of advanced expenses, or to take any other action to collect the litigation expenses from his client where there has been no recovery. The effect of the rule change, therefore, is to ensure that the prevailing practice of the bar will not constitute an ethical violation. [Pressler, 1984 N.J. Court Rules, comment R. 1:14.]
[10] Cf. LaMantia v. Durst, 234 N.J. Super. 534, 561 A.2d 275 (App.Div. 1989) (where attorney moved to different law firm during a case the firm was entitled to quantum meruit).
[11] See R. 1:11-3 which provides in part:

The responsibility of an attorney of record in any trial court with respect to the further conduct of the proceeding shall terminate upon the expiration of the time for appeal from the final judgment or order entered therein.
There can be little question that Siegel was not required to prosecute the appeal after the adverse jury verdict. It would thus be irrelevant whether prior practice would warrant the Dinters' belief that he would advance transcript costs for an appeal. Moreover, as noted, the client has the right to discharge the attorney at any time. See Cohen v. Radio-Electronics Officers, 275 N.J. Super. 241, 252-253, 645 A.2d 1248 (App.Div. 1994).