692 A.2d 1004

FRANCINE GLICK AND ANNETTE KRAUS, PLAINTIFFS–RE-
SPONDENTS, AND KRISTINE HERGENROTHER, PLAINTIFF,
v. BARCLAYS DE ZOETE WEDD, INC., BARCLAYS DE ZOETE
WEDD, INFORMATION TECHNOLOGY GROUP, BARCLAYS DE
ZOETE WEDD, LTD., AND LASLO GROSS, DEFENDANTS.

Superior Court of New Jersey
Appellate Division

Argued February 5, 1997—Decided April 28, 1997.

Before Judges LONG, SKILLMAN and A.A. RODRÍGUEZ.

*Judith E. Rodner* argued the cause for appellants Jonathan D. Strum and David Scott.

*Kevin Jespersen* argued the cause for respondents (*Slattery McElwee & Jespersen,* attorneys).

The opinion of this court was delivered by

LONG, P.J.A.D.

In June, 1992, plaintiffs, Francine Glick and Annette Kraus, retained Jonathan D. Strum, an attorney licensed to practice law in the District of Columbia and the State of New York, to represent them in an employment discrimination action against their former employer and related companies, defendants, Barclays De Zoete Wedd, Inc., Barclays De Zoete Wedd—Information Technology Group, Barclays De Zoete Wedd, Ltd. (Barclays), and Laslo Gross.

In September, 1992, Strum forwarded to plaintiffs a proposed contingent fee agreement for their review and signature. Under the proposal, Strum would receive 33⅓% of the recovery if the matter did not go to trial; 40% of the recovery if suit was filed; and 50% of the recovery if Strum filed an appeal or took action on behalf of plaintiff to enforce the judgment. The proposal also stated that no fee would be payable if there was no recovery.

By letter dated September 22, 1992, Kraus requested a change in the proposal to exclude the severance pay previously offered by defendants from the calculation of Strum's fee. Kraus added, "Otherwise it is fine." Glick never responded to Strum. Strum never revised the contingency agreement or forwarded it to plaintiffs for signature and nothing further was done with respect to the fee.

Plaintiffs retained local New Jersey counsel, Jane R. Altman, to file the lawsuit with the understanding that they would compensate her for her services on an hourly basis. A nine count complaint signed by both Altman and Strum was filed on behalf of plaintiffs [1] in the Superior Court, Law Division, Essex County. The complaint sought recovery based on the Law Against Discrimination (L.A.D.), *N.J.S.A.* 10:5–12; negligence; fraud, deceit and misrepresentation; wrongful discharge; tortious interference with contractual relations; defamation; tortious interference with prospective advantage; breach of contract; negligent infliction of emotional distress; and intentional infliction of emotional distress.

Altman filed a motion to admit Strum *pro hac vice.*[2] On April 15, 1993, the motion was heard. On this date, David Scott (who was apparently retained by Strum) entered his first appearance as counsel to plaintiffs, although there is no evidence in this record that they consented to such representation. On April 30, 1993, Strum was admitted *pro hac vice.* Discovery then ensued.

By letter dated October 21, 1994, plaintiffs advised Strum that they had retained new counsel in the litigation against Barclays and requested a listing of documented expenses incurred by Strum. They asked that Strum release all files to Neil Mullin of Smith Mullin, P.C. By letter dated October 25, 1994, Mullin advised Strum that it was a matter of "utmost importance and urgency" that Strum promptly forward the file to Smith Mullin and requested that Strum submit an invoice for costs and disbursements. The letter also stated that Smith Mullin would honor any lien submitted by Strum and that it would place money sufficient to cover such lien in escrow until resolution. Substitu-

---

[1] Kristine Hergenrother was also a named plaintiff in the action. She is not a party to this fee dispute.

[2] Defendant, Laslo Gross, opposed the motion by claiming a conflict of interest based on Strum's previous representation of him. Plaintiffs both submitted certifications in support of Strum's motion for admission.

tions of attorney were filed. The trial was scheduled to begin in February, 1995.

Strum sent Smith Mullin an "interim invoice" dated November 23, 1994, for expenses incurred and costs advanced in the amount of $10,849.66, $2,400.59 of which amount represented the balance owing to Altman for legal services. No charges for professional services rendered by Strum or Scott were included in this invoice. According to the certification of Strum's present attorney, Judith Rodner, based on her review of the file, Strum and Scott conducted discovery between April 30, 1993, and November 1, 1994, prior to the substitution of counsel. However, as of the date of oral argument on this appeal, Strum and Scott have neither rendered any bill to plaintiffs for services, nor have they provided an itemized listing or summary of the hours spent by them in representing plaintiffs.

By letter dated April 24, 1995, to Smith Mullin, Rodner confirmed that there was a fee dispute and requested Smith Mullin's "agreement" to honor her client's lien and place monies in escrow. On May 10, 1995, Rodner sent another letter to Smith Mullin confirming their agreement to place $250,000 in escrow. Smith Mullin promptly responded to such letter, denying any such agreement, reminding Rodner that Strum had not yet submitted any timesheets or invoices, and characterizing Rodner's demand for a lien in such amount as "outrageous." More correspondence between Rodner and Smith Mullin followed, with Smith Mullin making repeated requests for a copy of the contingent fee agreement or an itemized statement of services to no avail.

On June 2, 1995, plaintiffs filed a fee arbitration request. In the application, plaintiffs represented that they discharged Strum "for good cause" for failing to provide diligent, competent representation. In response, Rodner sent a letter to the Fee Arbitration Committee suggesting that its jurisdiction over this matter was questionable because the amount in dispute exceeded $100,000. Smith Mullin disagreed with Rodner over the existence of a valid

claim for apportionment of its fee and urged the Committee not to decline jurisdiction.

On June 6, 1995, Strum and Scott filed a motion in the Superior Court, Law Division, Essex County, under the caption and docket of the Barclays litigation (which by then had settled), seeking reciprocal discovery and a hearing on the apportionment of attorney fees. Rodner certified that such motion was prompted by Smith Mullin's refusal to release information concerning the settlement and to engage in reciprocal discovery.

Smith Mullin countered that Strum and Scott were attempting to avoid the fee arbitration process by "disguising" their fee dispute with plaintiffs as a dispute with Smith Mullin and that Strum and Scott were proceeding improperly and "parasitically" by filing their motion under the docket of a lawsuit which had already been dismissed, instead of filing a new complaint to which plaintiffs could raise defenses and a counterclaim for legal malpractice. Smith Mullin certified that Rodner had, despite repeated requests, refused to produce copies of any written retainer agreement or any invoices or timesheets reflecting the services rendered by Strum and Scott to plaintiffs. A hearing on this motion was stayed, pending a decision by the Fee Arbitration Committee.

On June 9, 1995, Smith Mullin advised Rodner that $250,000 had been placed in escrow, pending the outcome of the fee arbitration matter. A stipulation and order of dismissal was filed in the Barclays litigation, following the settlement. The terms and amount of the settlement remain undisclosed.

On August 25, 1995, the Fee Arbitration Committee, under the authority of *R.* 1:20A-2(b), declined jurisdiction over the fee dispute due to the fact that the amount in controversy exceeded $100,000 and because of the complexity of the issues. The Committee's action caused the stay of Strum and Scott's first motion to be lifted.

At the hearing held on the motion on September 15, 1996, Strum and Scott did not produce a copy of their retainer agreement with plaintiffs. The trial judge ruled that, absent an agreement or other evidence of entitlement to a fee, they were not entitled to any fee and indeed lacked standing to raise the fee issue.

Strum and Scott immediately forwarded copies of two retainer agreements and Kraus' letter of September 22, 1992, requesting a modification which Strum and Scott represented constituted the agreements between themselves and plaintiffs. Despite the judge's denial of their motion to compel discovery, Strum and Scott also included notices to produce and deposition notices. Smith Mullin advised Strum and Scott that plaintiffs would not be complying, based on the trial judge's denial of the earlier motion for reciprocal discovery.

On October 11, 1995, Strum and Scott refiled the notice of motion for discovery. Plaintiffs filed opposition as well as a cross-motion seeking the award of counsel fees. In their letter brief, plaintiffs pointed out that the copy of the retainer agreement provided by Strum and Scott was *not* a true copy of the proposed retainer agreement supplied by Strum to plaintiffs in 1992. The retainer agreement first provided by Strum and Scott included a provision that associate counsel could be hired at Strum's discretion, with the client bearing the expense of such services. Such provision was not included in the proposed agreement actually provided to plaintiffs by Strum.

At a hearing held on October 27, 1995, the trial judge held that, in the absence of an executed agreement, Strum and Scott could not support their application for any fee, even on a *quantum meruit* basis. The judge rejected Strum and Scott's argument that there was an enforceable retainer agreement:

The best we have is a letter back from one of them saying this is okay with Francine and I or whatever it happens to say except for this, but it's never been signed. The agreement's never been signed. Lawyers are responsible now to make certain that they're protected on all fashions and the retainer agreement itself should have been signed. One can't bind the other because they're both

> plaintiffs, so the very strongest thing you have is the certifications to the Court under other circumstances and that's not a retainer agreement. That's just saying hey, they're representing me. There's no showing of an agreement as to how there was going to be payment.

Strum and Scott argued that the court rules only require executed retainer agreements in tort cases and that, for other types of cases, the rules only require a writing. The judge dismissed this argument on the basis that employment discrimination is a tort. In conclusion, the trial judge found:

> Your clients did not get an agreement that was entered into spelling out in detail what the agreement was and signed off by all parties. There is no agreement of the minds and, quite frankly, I don't care what his certification says now when he gets caught at different retainer agreement being supplied to the Court. He is an attorney, he has an obligation to make certain that what comes to the court is exactly what transpired.

After hearing plaintiffs' argument on their cross-motion for attorney fees under the frivolous litigation statute (*N.J.S.A.* 2A:15–59.1), the trial judge found that Strum and Scott's application for a fee under an agreement which was never supplied to the judge or to the adversary was contrary to notions of "fair play." On that basis, the judge awarded $1955 in attorney fees to plaintiffs.

Strum and Scott appeal, contending that Strum's correspondence with plaintiffs, including a proposed agreement along with Kraus's response, met the standards of *RPC* 1.5(b) and that, in any event, *quantum meruit* recovery is available in a situation such as this which does not involve fraud or other wrongdoing on the attorneys' part. We have carefully reviewed this record in light of these contentions and have concluded that Strum and Scott did not have an enforceable contingent fee agreement with plaintiffs but that *quantum meruit* recovery against plaintiff is a theoretically available remedy.

## I

We turn first to the question of whether Strum and Scott had a valid contingent fee agreement with plaintiffs. Certainly Scott had no such agreement with plaintiffs. Indeed, this record

does not reveal the existence of any agreement whatsoever between plaintiffs and Scott.

Strum, on the other hand, relies on his proposal to plaintiffs and Krauss's response as creating a valid and enforceable contingent fee agreement. Not so. Because the nine count complaint filed on plaintiffs' behalf claimed damages, at least in part, based upon the alleged tortious conduct of Barclays and Laslo Gross, the applicable governing rule is *R.* 1:21–7 which sets forth, in relevant part, the details of a contingent fee agreement in a tort case:

(c) In any matter where a client's claim for damages is based upon the alleged tortious conduct of another, including products liability claims, and the client is not a subrogee, an attorney shall not contract for, charge, or collect a contingent fee in excess of the following limits:

(1) 33⅓% on the first $500,000 recovered;

(2) 30% on the next $500,000 recovered;

(3) 25% on the next $500,000 recovered;

(4) 20% on the next $500,000 recovered; and

(5) on all amounts recovered in excess of the above by application for reasonable fee in accordance with the provisions of paragraph (f) hereof. . . .

. . . .

(g) Where the amount of the contingent fee is limited by the provisions of paragraph (c) of this rule, *the contingent fee agreement shall be in writing, signed both by the attorney and the client, and a signed duplicate shall be given to the client* [emphasis added].

Clearly the provisions of *R.* 1:21–7(g) were not met by Strum. Although Strum's original proposal was in writing, it was never signed by plaintiffs, nor was a duplicate of the signed document provided to plaintiffs. While Kraus indicated to Strum which provisions of his proposal were acceptable and which were not, Strum never responded to her counter proposal; did not prepare a new agreement; and did not obtain her signature or that of Glick or provide either with a duplicate, thus contravening *R.* 1:21–7(g).

■ Strum and Scott argue that *R.* 1:21–7 is not the guiding principle here but that the applicable rule is *RPC* 1.5(b) which provides:

When the lawyer has not regularly represented the client, the basis or rate of the fee shall be *communicated in writing* to the client before or within a reasonable time after commencing the representation (emphasis added).

The gist of this argument is that, because plaintiffs' complaint contains L.A.D. and contract allegations, the matter is therefore not a tort action governed by *R.* 1:21–7. If this were the case, it would be *RPC* 1.5(c), not *RPC* 1.5(b), which applied. *RPC* 1.5(c) provides:

> A contingent fee *agreement* shall be in writing and shall state the method by which the fee is to be determined, including the percentage or percentages that shall accrue to the lawyer in the event of settlement, trial or appeal, litigation and other expenses to be deducted from the recovery, and whether such expenses are to be deducted before or after the contingent fee is calculated [emphasis added].

While it is arguable that, under this Rule which generally governs contingent fee agreements, Strum and Krauss had a valid agreement, it is implicit in the language of *RPC* 1.5(c) that the offer, as well as client's acceptance, of the terms of the retainer be in writing. Nevertheless, this is not the applicable rule. It is the more specific *R.* 1:21–7 which governs this case. That rule details the provisions necessary for a valid contingent fee agreement in every tort case and does not distinguish between cases which plead only tort causes of action and those which include other claims. To whatever extent a plaintiff's complaint seeks damages for tortious conduct, the contingent fee agreement falls squarely under *R.* 1:21–7, the provisions of which were not met by Strum's proposal.

*II*

■■■■■ In the absence of such an agreement, the question remains as to whether Strum and Scott are entitled to *quantum meruit* recovery. Under ordinary circumstances, a client may discharge an unwanted attorney with or without cause. "The client's right to terminate at will is not a breach of contract but a contract term implied at law based upon the special relationship of trust and confidence between attorney and client." *Cohen v. Radio–Electronics Officers Union,* 275 *N.J.Super.* 241, 261, 645

A.2d 1248 (App.Div.1994).[3]  An attorney hired on a contingent fee basis and later discharged before completion of the services is not entitled to recover fees on the basis of such contingent agreement; instead, he or she may be entitled to recover on a *quantum meruit* basis for the reasonable value of the services rendered. *Cohen v. Radio–Electronics Officers Union,* 146 *N.J.* 140, 679 A.2d 1188 (1996); *In re Estate of Poli,* 134 *N.J.Super.* 222, 227, 338 A.2d 888 (Mercer County Ct.1975).

*Quasi*-contractual obligations are imposed by law to bring about justice, without reference to the parties' intent.  *St. Paul Fire & Marine Ins. Co. v. Indemnity Ins. Co. of North America,* 32 *N.J.* 17, 22, 158 A.2d 825 (1960).  *Quantum meruit* is a form of quasi-contract, permitting recovery of as much as is deserved.  *Kopin v. Orange Products, Inc.,* 297 *N.J.Super.* 353, 367, 688 A.2d 130 (App.Div.1997) (citations omitted).  Where an attorney performs legal services for another at his request, but without any agreement or understanding as to the remuneration, the law implies a promise on the party who requested such services to pay a just and reasonable compensation.  *Kopin, supra,* 297 *N.J.Super.* at 367, 688 A.2d 130 (quoting *Conklin v. Kruger,* 79 *N.J.L.* 326, 328, 75 A. 436 (Sup.Ct.1910)).  Thus, to prevail, the dismissed attorney must demonstrate that the former client would be unjustly enriched by the receipt and retention of a benefit without compensation, where the attorney, in conferring the benefit, expected to be paid.  *Kopin, supra,* 297 *N.J.Super.* at 367, 688 A.2d 130 (citing *Cohen v. Home Ins. Co.,* 230 *N.J.Super.* 72, 82, 552 A.2d 654 (App.Div.1989)).

Because the proper measure of compensation under *quantum meruit* is as much as is deserved, *La Mantia v. Durst,* 234 *N.J.Super.* 534, 537, 561 A.2d 275 (App.Div.), *certif. denied,*

---

[3] This decision was modified and remanded in *Cohen v. Radio–Electronics Officers Union,* 146 *N.J.* 140, 679 A.2d 1188 (1996).  The Supreme Court therein adopted the "modern rule" that the client's right to discharge an attorney is an implicit term of the contract for legal services.  *Id.* at 163–64, 679 A.2d 1188.

118 *N.J.* 181, 570 *A.*2d 950 (1989), the crucial factor in determining the amount of recovery is the contribution which the lawyer made to advancing the client's cause. *Dinter v. Sears, Roebuck & Co.,* 278 *N.J.Super.* 521, 531–32, 651 *A.*2d 1033 (App.Div.), *certif. denied,* 140 *N.J.* 329, 658 *A.*2d 728 (1995); *La Mantia, supra,* 234 *N.J.Super.* at 539–43, 561 *A.*2d 275; *Anderson v. Conley,* 206 *N.J.Super.* 132, 150–51, 501 *A.*2d 1057 (Law Div.1985); *Buckelew v. Grossbard,* 189 *N.J.Super.* 584, 587–88, 461 *A.*2d 590 (Law Div.), *aff'd o.b.,* 192 *N.J.Super.* 188, 469 *A.*2d 518 (App.Div.1983). Thus, if a retiring lawyer cedes to his successor a substantially prepared case which resulted from an extensive investment of time, skill and funds, the retiring lawyer might be entitled to compensation greater than the standard hourly rate. *See La Mantia, supra,* 234 *N.J.Super.* at 541–43, 561 *A.*2d 275. In comparison, if a ceding lawyer's work contributed to a recovery by the client, but the new attorney was crucial in the success of the case, then the predecessor's compensation should be based, at most, upon a standard hourly rate. *See Anderson, supra,* 206 *N.J.Super.* at 150–51, 501 *A.*2d 1057. Finally, if the predecessor's work, no matter how extensive, contributed little or nothing to the case, then the ceding lawyer should receive little or no compensation. *Dinter, supra,* 278 *N.J.Super.* at 535, 651 *A.*2d 1033. Where the attorney is discharged for good cause, he or she may not be entitled to any recovery, except reimbursement of the reasonable costs incurred in the representation. *Id.* at 536, 651 *A.*2d 1033.

Plaintiffs concede in their brief that *quantum meruit* is a method by which Strum and Scott could theoretically be compensated in this case, but argue that the performance of those lawyers was inadequate and thus warranted no remuneration. We need not dwell on plaintiffs' characterization of Strum and Scott's lawyering because the trial judge did not permit a plenary hearing on this issue. The trial judge made no findings as to the reason for the lawyers' discharge, thus leaving a record devoid of evidence upon which the issue could be resolved.

What the case does present for resolution is whether, in light of the recent decision of this court in *Estate of Pinter v. Mc Gee*, 293 *N.J.Super.* 119, 679 *A.*2d 728 (App.Div.1996), a *quantum meruit* hearing is warranted. In *Pinter*, a law firm was retained to handle a negligence and wrongful death action on behalf of Lisa Pinter. No written retainer agreement was obtained. The attorney who handled the case, Andrew Fraser, left the firm and took the Pinter case with him. A dispute arose regarding the sharing of fees after Fraser successfully settled the case. The original law firm contended that it had orally agreed to take the Pinter case on a discounted contingent fee basis, while Fraser testified that the case was accepted on a no fee basis, with the client being liable only for the expenses incurred. *Id.* at 122–23, 679 *A.*2d 728. Despite a finding that there was an honest misunderstanding between the parties regarding the fee arrangement, the trial judge nonetheless denied the original law firm any recovery because of its failure to obtain an executed fee agreement. *Id.* at 124, 679 *A.*2d 728. Another panel of this court affirmed, holding that "[w]hile *quantum meruit* recoveries by law firms have been permitted by our courts, they do not involve circumstances in which the Rules have been violated." *Id.* at 126–27, 679 *A.*2d 728. "[T]he firm's failure to memorialize its contingent fee arrangement violates *R.* 1:21–7 and *RPC* 1.5(c), and we cannot sanction circumvention of the rule by permitting recovery on a *quantum meruit* basis. We do not preclude, however, an application for actual out-of-pocket disbursements." *Pinter, supra,* 293 *N.J.Super.* at 128, 679 *A.*2d 728.

*Pinter* conflicts with two other decisions of this court. In *La Mantia, supra,* 234 *N.J.Super.* 534, 561 *A.*2d 275, the panel was faced with the problem of a lawyer who had done work in good faith without an agreement and indicated that *quantum meruit* was available to him. Indeed, *Pinter* acknowledged that its result was inconsistent with that achieved in *La Mantia. Pinter, supra,* 293 *N.J.Super.* at 127, 679 *A.*2d 728. Likewise, the result in *Pinter* is at odds with *In re Estate of Travarelli,* 283 *N.J.Super.* 431, 662 *A.*2d 572 (App.Div.1995). There a panel of this court

found that an attorney's failure to reduce the contingent fee agreement with client to writing violated *R.* 1:21–7 as well as *RPC* 1.5(b) and *RPC* 1.5(c). *Id.* at 437, 662 *A.*2d 572. Despite the existence of a fully executed contingent fee agreement relating to the attorney's prior representation of the client in a wrongful death action, the attorney could not rely on such agreement to collect a fee for the representation of the client in a matter of a different nature. *Id.* at 436, 662 *A.*2d 572. However, the court allowed the recovery of a reasonable fee on a *quantum meruit* basis. *Id.* at 440, 662 *A.*2d 572.

Cognizant as we are of the salutary purposes meant to be achieved by *Pinter,* we nevertheless respectfully disagree with it. To us, it is too harsh a result to deny all compensation to an attorney who was retained and rendered services in good faith based solely on a failure to obtain a written fee agreement in conformity with *R.* 1:21–7 (or *RPC* 1.5(c)) where no wrongful or unethical conduct is found to exist. Indeed this kind of a situation is exactly what the doctrine of *quantum meruit* was meant to remedy. We agree with Judge Shebell's concurrence in *Pinter,* that failure to comply with the contingent fee rule "merely bars the award of a contingent fee, but not a reasonable fee based on the services actually rendered." *Pinter, supra,* 293 *N.J.Super.* at 128, 679 *A.*2d 728. For that reason, the trial judge's refusal to consider *quantum meruit* recovery is reversed. The matter is remanded for a determination of Strum and Scott's entitlement to legal fees based upon the doctrine of *quantum meruit.*

The award of counsel fees to plaintiffs on Strum and Scott's motion is also reversed. That award was based upon the frivolous litigation statute, and more particularly upon Strum and Scott's conduct in this case which the judge believed violated notions of "fair play." The judge viewed the frivolous litigation statute as applicable here, despite the fact that this case was cast as a motion (*See Lewis v. Lewis,* 132 *N.J.* 541, 626 *A.*2d 422 (1993)), because she concluded that Strum and Scott's application should have been made by way of a new complaint. In any event,

given the outcome here, it is clear that Strum and Scott's application for relief was not frivolous and that the frivolous litigation statute, the only possible wellspring for an award of counsel fees, did not apply.

Affirmed in part; reversed and remanded in part.