696 A.2d 724

GEORGE A. VACCARO AND JOSEPH C. WOODCOCK, PLAIN-
TIFFS–APPELLANTS, v. ESTATE OF CHARLES GOROVOY
AND SOLOMON TURETSKY, D/B/A QUAD ASSOCIATES, DE-
FENDANTS–RESPONDENTS.

Superior Court of New Jersey
Appellate Division

Submitted June 10, 1997—Decided July 2, 1997.

Before Judges STERN, HUMPHREYS and WECKER.

*Melli & Wright,* attorneys for appellants (*Charles R. Melli, Jr.,* and *Mary E. Romano,* on the brief).

*Wells, Jaworski, Liebman & Paton,* attorneys for respondents (*Thomas M. Wells* and *James M. Maggio, Jr.,* on the letter brief).

STERN, J.A.D.

This is an appeal from the grant of summary judgment dismissing plaintiffs' complaint seeking the recovery of attorney's fees. Because defendants' cross motion for summary judgment was granted, we must accept plaintiffs' contentions that they were retained by defendants to file a zoning application designed to obtain approval for higher density residential construction on Quad Associates' sixty-two acre property and that the parties orally agreed that a contingency fee would be paid in the amount of "five percent of any increase in the value of the land that would result from a change in the zoning designation." [1]

It is undisputed that after plaintiffs worked on the project for about six years, they were advised by defendant Solomon Turetsky (who assumed the management of Quad following the death of his partner Charles Gorovoy) to discontinue their efforts on Quad's behalf. Plaintiffs thereafter submitted a bill for 265 hours

---

[1] Plaintiffs state that their work effort involved the zoning application and related negotiations as well as proceedings before the Council on Affordable Housing and this court. It appears undisputed that the original agreement was made by Quad managing partner Charles Gorovoy with George Vaccaro and that Joseph Woodcock had to handle certain proceedings because Vaccaro had a conflict of interest.

of work at $225 an hour,for a total of $59,625, which defendants declined to pay because Turetsky was "in a state of shock by the amount." Plaintiffs claim that defendants thereafter retained another attorney and that the rezoning application was ultimately granted.

In their complaint, plaintiffs sought recovery for breach of an oral contract, *quantum meruit,* and unjust enrichment. In their affirmative defenses, defendants asserted that the "contingencies never occurred" and that any increased value of the property was not attributable to plaintiffs.

The trial judge granted defendants' motion for summary judgment and dismissed the complaint because he felt bound by our opinion in *Estate of Pinter v. McGee,* 293 *N.J.Super.* 119, 679 *A.*2d 728 (App.Div.1996). Plaintiffs contend, however, that they are entitled to *quantum meruit* recovery and that *Pinter* does not preclude recovery in this case because "*Pinter* does not overrule the years of precedent that allow an attorney the right to recover the reasonable value of services under a quantum meruit theory, when that attorney has been discharged in the midst of performing services pursuant to a contingency fee agreement." We agree and reverse the grant of summary judgment for defendants.

The plaintiffs properly read *Pinter* narrowly. It involved a dispute regarding whether any fee was to be paid for representation of the estate of the mother of an associate's fiancee. The trial judge found as a matter of fact that the dispute was in good faith; the plaintiffs' managing partner had testified that his expectation of a fee was limited to a percentage of the recovery to be determined at the time of disposition; the associate left plaintiff firm; its representation was not terminated to avoid payment of the contingent fee; and there was no compliance with the requirements of either *R.* 1:21–7 or *RPC* 1.5(c).

Recently, in *Glick v. Barclays De Zoete Wedd, Inc.,* 300 *N.J.Super.* 299, 307, 692 *A.*2d 1004 (App.Div.1997), another panel of this court disagreed with *Pinter* and held that "*quantum meruit* recovery is available in a situation [there involving an employment

discrimination case] ... which does not involve fraud or other wrongdoing on the attorney's part," even though the attorney failed to comply with the requirements of *R.* 1:21–7 and *RPC* 1.5(c). In *Glick,* there was a writing evidencing the contingency fee arrangement acknowledged by one of the two plaintiffs who had approved the agreement with one modification. *Id.* at 302, 692 *A.*2d 1004. In any event, we need not further explore any factual differences between *Pinter* and *Glick* nor express any views as to whether they can be reconciled. This is because *Glick* and *Pinter* are distinguishable as they both involved tort actions controlled by *R.* 1:21–7(c) and (g).[2]

Here the case involves a retainer to pursue a zoning application, and we find no policy reasons for barring, as a matter of law, recovery for reasonable compensation in *quantum meruit* in a commercial setting merely because there was no written retainer,

---

[2] *R.* 1:21–7(c) provides:

In any matter where a client's claim for damages is based upon the alleged tortious conduct of another, including products liability claims, and the client is not a subrogee, an attorney shall not contract for, charge, or collect a contingent fee in excess of the following limits:

(1) 33 1/3% on the first $500,000 recovered;

(2) 30% on the next $500,000 recovered;

(3) 25% on the next $500,000 recovered;

(4) 20% on the next $500,000 recovered; and

(5) on all amounts recovered in excess of the above by application for reasonable fee in accordance with the provisions of paragraph (f) hereof; and

(6) where the amount recovered is for the benefit of a client who was a minor or incompetent when the contingent fee arrangement was made, the foregoing limits shall apply, except that the fee on any amount recovered by settlement without trial shall not exceed 25%.

*R.* 1:21–7(g) provides:

Where the amount of the contingent fee is limited by the provisions of paragraph (c) of this rule, the contingent fee arrangement shall be in writing, signed both by the attorney and the client, and a signed duplicate shall be given to the client. Upon conclusion of the matter resulting in a recovery, the attorney shall prepare and furnish the client with a signed closing statement. Such contingent fee arrangement and closing statement, if any, shall be in the form prescribed by the Administrative Director of the Courts.

as required by *RPC* 1.5. The clients were sophisticated business persons who by Turetsky's admission expected to pay counsel for their labors over several years. If the zoning application was granted as a result of the fruits of plaintiffs' work product, defendants cannot obtain a windfall at the expense of their attorneys merely because plaintiffs failed to comply with the requirements of *RPC* 1.5.[3]

A lawyer is not required to enter into a contingent fee agreement even in tort cases. *R.* 1:21–7(b) expressly provides that no contingent fee agreement shall be entered before the attorney "afford[s] the client an opportunity to retain the attorney under an arrangement for compensation on the basis of the reasonable value of the services." *R.* 1:21–7(c) limits the amount of a contingent fee in tort litigation where the attorney's fee is contingent upon the amount of the recovery. *R.* 1:21–7(g) also provides that "[w]here the amount of the contingent fee is limited by the provisions of paragraph (c) of this rule, the contingent fee arrangement shall be in writing, signed both by the attorney and the client, and a signed duplicate shall be given to the client."

However, as noted, paragraph (c) of the rule expressly relates only to "any matter where a client's claim for damages is based upon the alleged tortious conduct of another. . . ." *R.* 1:21–7(c).

---

[3] *RPC* 1.5(c) provides:

A fee may be contingent on the outcome of the matter for which the service is rendered, except in a matter in which a contingent fee is prohibited by law or by these rules. *A contingent fee agreement shall be in writing* and shall state the method by which the fee is to be determined, including the percentage or percentages that shall accrue to the lawyer in the event of settlement, trial or appeal, litigation and other expenses to be deducted from the recovery, and whether such expenses are to be deducted before or after the contingent fee is calculated. Upon conclusion of a contingent fee matter, the lawyer shall provide the client with a written statement stating the outcome of the matter and, if there is a recovery, showing the remittance to the client and the method of its determination.

[Emphasis added.]

*See also RPC* 1.5(b) requiring a writing "[w]hen the lawyer has not regularly represented the client. . . ."

This is not such a matter. Although *R.* 1:21–7(e) provides that "[i]n all cases contingent fees charged or collected must conform to *RPC* 1.5(a) [requiring fee to be reasonable]," there is no reference in *R.* 1:21–7 to the requirement of a writing except with respect to a tort action.

As our Supreme Court recently made clear in *Cohen v. Radio–Electronics Officers Union,* 146 *N.J.* 140, 162–63, 679 *A.*2d 1188 (1996), "[u]nder the modern rule, when a client discharges an attorney, the attorney may recover the fair value of his or her services," and this rule applies "extensively to contingent fee agreements." *See also Glick, supra,* 300 *N.J.Super.* at 310, 692 *A.*2d 1004. Thus, the plaintiff in *Cohen* was "entitled to recover in *quantum meruit* for the reasonable value of the services provided." *Cohen, supra,* 146 *N.J.* at 164, 679 *A.*2d 1188. Further, an attorney cannot be discharged before the contingency occurs merely to avoid paying the contingency fee. *Dinter v. Sears, Roebuck & Co.,* 278 *N.J.Super.* 521, 531, 651 *A.*2d 1033 (App.Div.), *certif. denied,* 140 *N.J.* 329, 658 *A.*2d 728 (1995).[4] Similarly under the "modern rule" the absence of a written retainer does not require giving defendants a windfall at the expense of their attorneys, if the zoning application was ultimately granted with the benefit of the plaintiff's work product.

The "modern rule" addressed by our Supreme Court in *Cohen, supra,* finds support in the Proposed Final Draft No. 1 of the *Restatement (Third) of the Law Governing Lawyers* (1996), Section 51, which provides:

---

[4] Neither *Pinter* nor *Glick* involved an effort by a client to discharge counsel shortly before a recovery was achieved in order to avoid paying any fee based on the contingency. In such case, where there is substantial performance by the attorney under the contingency agreement, there is authority that the attorney may be permitted to recover under the agreement. *See Cohen, supra,* 146 *N.J.* at 163, 679 *A.*2d 1188 (citing *Barr v. Day,* 124 *Wash.*2d 318, 879 *P.*2d 912, 916–18 (1994)); *see also Dinter, supra,* 278 *N.J.Super.* at 531, 651 *A.*2d 1033.

> If a client and lawyer have not made a valid agreement providing for another measure of compensation, a client owes a lawyer who has performed legal services for the client the fair value of the lawyer's services.

Comment (i) makes clear that where a retainer agreement is unenforceable "because it is a contingent-fee agreement but is not in writing as a court rule requires[,][q]uantum-meruit recovery then provides compensation in circumstances in which it would be contrary to the parties' expectation to deprive the lawyer of all compensation." *See also id.* comment (e) ("Recovery of fees when fee agreement unenforceable.").

We are satisfied that the Supreme Court's opinion in *Cohen* and this court's opinion in *Glick* (both of which were decided after *Pinter* ), and the fact that this case involves a commercial transaction, all compel the conclusion that defendants are not entitled to summary judgment.

■ Of course plaintiffs cannot benefit from their failure to comply with the requirements of *RPC* 1.5 and cannot collect based on the contingency agreement. In general, the trial court should be guided by the principles detailed in *Glick, supra,* at 310–11, 692 *A.*2d 1004, with respect to determining the fair value of plaintiffs' services. *See* also *Restatement (Third), supra,* section 52. For present purposes we hold only that the failure to enter a written retainer agreement does not preclude recovery in *quantum meruit.*

We reverse the grant of summary judgment and remand for further proceedings consistent with this opinion.